## VOGEL, Executor, *v.* GRUAZ.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

Argued January 17th, 18th, 1884.—Decided February 4th, 1884.

*Privileged Communication—Slander.*

A communication made to a State's attorney, in Illinois, his duty being to "commence and prosecute" all criminal prosecutions, by a person who inquires of the attorney whether the facts communicated make out a case of larceny for a criminal prosecution, is an absolutely privileged communication, and cannot, in a suit against such person to recover damages for speaking words charging larceny, be testified to by the State's attorney, even though there be evidence of the speaking of the same words to other persons than such attorney.

*Mr. James K. Edsall* (*Mr. John B. Hawley* was with him) for plaintiff in error.

*Mr. H. S. Greene* (*Mr. F. W. Barnett* was with him) for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action on the case, brought by Timothy Gruaz against Rudolph Bircher, to recover damages for the speaking and publishing of false, malicious, scandalous and defamatory words, charging the plaintiff with being a thief, and with having stolen the money of the defendant, meaning the crime of larceny. The suit was commenced in a State court of Illinois, and was removed by the defendant into the Circuit Court of the United States for the Southern District of Illinois. At the trial before a jury a verdict was rendered for the plaintiff, June 6th, 1879, for $6,000 damages. On the next day the defendant filed a motion for a new trial. On the 14th of June the defendant died, on the 12th of July an order abating the case was moved for, on behalf of the defendant, and on the 16th of August the court overruled the motion for a new trial and the motion for an order of abatement, and entered a judgment for the plaintiff, against Bircher, for $6,000 and costs, as of June

7th, 1879. The order for judgment recited that the hearing by the court of the motion for a new trial was, when it was filed, postponed to a then future and convenient day of the same term, and that the defendant died pending the hearing of the motion. Leave was given to the executor of the defendant to prepare a bill of exceptions and to take a writ of error. The bill of exceptions being signed, it was filed by the executor, and the writ of error was issued. Various errors are assigned, and among them that the Circuit Court did not grant the motion to abate the suit, and that it rendered a judgment against Bircher after his death. But it is unnecessary to pass on those questions, because we are of opinion that the judgment must be reversed for another error committed at the trial.

Three witnesses for the plaintiff gave evidence tending to prove the speaking to them by the defendant of more or less of the words set forth in the declaration; and afterwards C. L. Cook was sworn as a witness for the plaintiff, and testified that he was State's attorney for Madison County, Illinois; that he had a slight acquaintance with Bircher; and that he knew Gruaz. The following proceedings then occurred:

"Q. I will ask you if you had any conversation with Doctor Bircher with regard to Gruaz, and, if so, when was it? Counsel for defence asked witness if at that time he was occupying the same position he now holds. A. Yes, sir. Q. It was communicated to you while you held that position and were acting in that capacity, whatever was communicated to you by Bircher? A. Yes, sir. (Defendant's counsel object to the witness testifying to matters disclosed to him by the defendant under the circumstances stated, on the ground that such communications are to be treated as privileged.) The Court. I will ask the witness if he regarded it professionally as a privileged communication? A. I had never met defendant before, he was introduced to me by a citizen of our place, and he informed me that he wanted to talk with me with regard to a matter he wanted to bring before the grand jury. (Objected to.) The Court. I will allow the witness to state what the doctor said on that occasion. Of course, if he made the communication to the witness in good faith, there would be no malice about it, and I shall instruct the jury to dis-

regard it. The objection is overruled. To which ruling of the court the defendant at the time excepted. A. As I stated, I had at that time no acquaintance with defendant whatever. He inquired for the State's attorney, and was introduced to me, and he spoke of his affairs. He said he wanted to bring a matter before the grand jury in regard to Mr. Gruaz. I talked with him in regard to the nature of the matter, and he talked pretty freely in regard to it, and I directed him to the grand jury room. He said a good many things. He was evidently in earnest at the time, expressed himself very freely in regard to him. I would not like to swear to the exact words used, or that anybody used at the time. I can give the substance of what he said, I suppose. He wanted to prosecute Gruaz for stealing, was the amount of it. I recollect this : he charged him with having stolen his money, and I asked him how, and he told me how it had been done. Gruaz was his agent and handled his funds, rented his farms, and had failed to account for a large amount of money, he told me, and he charged him in this conversation with having stolen his money, and he said he wanted to know if there was any law in this State to prosecute a man for that. I have no objection to state any words. I remember his making the charge that he had stolen his money, but I can't swear that the word 'thief' was used at that time ; that it was in substance, undoubtedly. My impression is that this was the March term, 1878, of the Circuit Court of Madison County, either that or October term, 1877 ; my recollection and decided impression is that it was the spring term, 1878. Dr. Bircher went into the grand jury room and gave his statement to the grand jury. He was anxious, of course, to have the indictment found, and he evidently believed or so expressed himself. Counsel for defendant objected to witness stating his opinion about what defendant evidently believed. The Court. He said he went before the grand jury, and said he seemed to be in earnest in his movements, but he didn't say what took place before the grand jury. Don't know, I suppose. Witness. No, I don't know. Cross-examination. Major Prickett introduced Bircher to me ; never saw him before in my life. I was certain he came to see me as prosecuting attorney, in good faith. That was his business, as he stated it to me. After he made his statement to me I advised him to go before the grand jury ; directed him to their room. He went there by my advice. Hold on—I don't

say that ; I advised him that he had a good case.  He came to me and I showed him where the grand jury room was.  He stated his case to me as State's attorney.  I then directed him where to go, and said I should prosecute it as vigorously as possible, if the indictment was found.  In regard to the advice I gave him, I rather encouraged him to drop the thing ; I told him he better sue Mr. Gruaz first, and see if he couldn't get judgment against him, and so put it in a better shape to prosecute him.  He stated his case, and I thought from his statement that he would have few, if any, witnesses besides himself, and that it would be doubtful, however honestly he might believe that he had cause, it would be doubtful whether the jury would bring a bill ; so I advised him to bring a civil suit ; but, said I, you are here, and you mustn't think hardly of me if the grand jury don't find a bill ; and I directed him to the grand jury room."

The bill of exceptions also contains the following :

" In reference to the testimony of State's attorney C. L. Cook, the court instructed the jury as follows : 'I admitted that evidence with an explanation, and with the explanation made in the admission of it I think I am content, and I think the jury may take it into consideration ; but, if they think the defendant was actuated by honest motives, in making the declaration he did, they will disregard it.'  To the giving of which last instruction the defendant excepted, for the reason that the instruction ignores the element of want of probable cause, and for the reason, also, that the jury should have been instructed to disregard Cook's testimony entirely."

We are of opinion that what was said by Bircher to Mr. Cook, was an absolutely privileged communication.  It was said to Mr. Cook while he was State's attorney, or prosecutor of crimes, for the county, and while he was acting in that capacity. Bircher inquired for the State's attorney, and was introduced to him, and stated to him that he wanted to talk with him about a matter he wanted to bring before the grand jury in regard to Gruaz.  He laid the matter before Mr. Cook, and charged Gruaz with having stolen his money, and was asked how, and stated

how, and inquired of Mr. Cook if there was any law in Illinois by which a man could be prosecuted for that. The grand jury was then in session, and Mr. Cook advised Bircher that he had a good case, and directed him to the grand jury room, and Bircher went before the grand jury. If all this had taken place between Bircher and an attorney consulted by him who did not hold the public position which Mr. Cook did, clearly, the communication would have been privileged, and not to be disclosed against the objection of Bircher. Under the circumstances shown, Mr. Cook was the professional adviser of Bircher, consulted by him, on a statement of his case, to learn his opinion as to whether there was ground in fact and in law for making an attempt to procure an indictment against Gruaz. The fact that Mr. Cook held the position of public prosecutor, and was not to be paid by Bircher for information or advice, did not destroy the relation which the law established between them. It made that relation more sacred, on the ground of public policy. The avenue to the grand jury should always be free and unobstructed. Bircher might have gone directly before it, without consulting with Mr. Cook, but, if he chose to consult him, instead of a private counsel, there was great propriety in his doing so. Any person who desires to pursue the same course should not be deterred by the fear of having what he may say in the confidence of a consultation with a professional adviser, supposed to be the best qualified for the purpose, disclosed afterwards in a civil suit, against his objection. *Oliver* v. *Pate,* 43 Ind. 132. By the statute of Illinois in force at the time of this occurrence, it was made the duty of each State's attorney to "commence and prosecute" all criminal actions, suits, indictments, and prosecutions, in any court of record in his county, in which the people of the State or county might be concerned. Rev. Stat. of 1874, chap. 14, § 5, subd. 1. Under this provision it was the province and the privilege of any person who knew of facts tending to show the commission of a crime, to lay those facts before the public officer whose duty it was to commence a prosecution for the crime. Public policy will protect all such communications, absolutely, and without reference to the motive or intent of the informer or the question of probable cause; the

ground being, that greater mischief will probably result from requiring or permitting them to be disclosed than from wholly rejecting them. Mr. Cook learned from Bircher the things to which he testified because he occupied the position of public prosecuting officer, and because he was acting at the time as the legal adviser of Bircher in respect to the matter in question which Bircher was laying before him. The free and unembarrassed administration of justice in respect to the criminal law, in which the public is concerned, is involved in a case like the present, in addition to the considerations which ordinarily apply in communications from client to counsel in matters of purely private concern. Bircher made his communication to Mr. Cook for the purpose of obtaining professional advice as to his right, and that of the public through him, to have a criminal prosecution commenced by Mr. Cook, by the intervention of the grand jury, against Gruaz.

But there is another view of the subject. The matter concerned the administration of penal justice, and the principle of public safety justifies and demands the rule of exclusion. In *Worthington* v. *Scribner*, 109 Mass. 487, an action for maliciously and falsely representing to the Treasury Department of the United States that the plaintiff was intending to defraud the revenue, it was held that the defendant could not be compelled to answer whether he did not give to the department information of supposed or alleged frauds on the revenue contemplated by the plaintiff. The principle laid down in that case was, that it is the duty of every citizen to communicate to his government any information which he has of the commission of an offence against its laws; and that a court of justice will not compel or allow such information to be disclosed, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government, the evidence being excluded not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications. The authorities are collected and reviewed in that case. The case of *Dawkins* v. *Rokeby*, L. R. 8 Q. B. 255, there cited, was affirmed by the House of Lords,

L. R. 7 H. L. 744. See also, 1 Greenleaf on Evidence, § 250; *Black* v. *Holmes*, 1 Fox & Smith, 28.

It makes no difference that there was evidence of the speaking of the same words to persons other than Mr. Cook, and that the speaking of them to Mr. Cook was not the sole ground of action or of recovery. The evidence was incompetent, and it must be inferred that it affected the minds of the jury both on the main issue and on the question of damages.

It results from these views that the judgment below cannot be upheld, and that it must be reversed, and

*The case be remanded to the Circuit Court, with direction to set aside the verdict and vacate the judgment and take such further proceedings as may be according to law and not inconsistent with this opinion.*