*In re* QUARLES AND BUTLER, Petitioners.

*In re* McENTIRE AND GOBLE, Petitioners.

ORIGINAL.

Nos. 14 and 15. Original. Submitted April 22, 1895. — Decided May 20, 1895.

It is the right of every private citizen of the United States to inform a marshal of the United States, or his deputy, of a violation of the internal revenue laws of the United States; this right is secured to the citizen by the Constitution of the United States; and a conspiracy to injure, oppress, threaten, or intimidate him in the free exercise or enjoyment of this right, or because of his having exercised it, is punishable under section 5508 of the Revised Statutes.

THESE were two motions for leave to file petitions for writs of *habeas corpus* to Samuel C. Dunlop, marshal of the United States for the Northern District of Georgia. The first motion was in behalf of John M. Quarles and David Butler; and the case was as follows:

At March term, 1895, of the Circuit Court of the United States for that district, an indictment was returned against the petitioners and several other persons, the fourth count of which alleged that within that district, on April 7, 1894, the defendants conspired " to injure, oppress, threaten and intimidate one Henry Worley, a citizen of the United States, in the free exercise and enjoyment of a right and privilege secured to him by the Constitution and laws of the United States, and because of his having exercised the same, in that he, the said Henry Worley," on March 19, 1894, " had reported and informed William J. Duncan, a United States deputy marshal in and for said Northern District of Georgia, that George Terry did," on that day, and within that district, " violate the internal revenue laws of the United States, by carrying on the business of a distiller without having given bond as required by law;" and that the conspiracy hereinbefore charged was formed by the defendants, " for the purpose of

injuring, oppressing, threatening and intimidating the said Henry Worley, because of his having exercised said right and privilege secured to him as aforesaid, in reporting and informing said William J. Duncan, deputy marshal as aforesaid, of the violation of the internal revenue laws as aforesaid by the said George Terry; and in furtherance of said conspiracy so formed as aforesaid, and for the purpose aforesaid, and to effect the object thereof," the defendants, on April 7, 1894, within the district, in the night time and in disguise, went to Worley's house, and took him from his house and beat, bruised and otherwise ill-treated him, and shot at him with guns and pistols, with intent to kill and murder him, because he had reported to said Duncan, deputy marshal as aforesaid, said Terry for having violated the revenue laws of the United States as aforesaid; "contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The first, second and third counts of the indictment were like the fourth, except as to the persons against whom the information was given.

The defendants demurred to each of the four counts, " because the right and privilege alleged as the right and privilege of a citizen of the United States is not one secured by the Constitution and laws of the United States;" " because there is no such right and privilege secured to the citizens of the United States, as such citizens, as that set out in the said count;" and " because there is no offence charged in the said count, of which the courts of the United States can have or take cognizance." The demurrer was overruled.

The defendants then pleaded not guilty, and were tried and convicted by a jury, and moved in arrest of judgment for the following reasons:

"1. Because in said indictment there is no allegation that William J. Duncan was an officer of the United States, and charged with the enforcement of the internal revenue laws; nor is there any allegation that the said William J. Duncan was authorized to take information upon such subject, or to employ persons for the service of the United States.

" 2. Because there is no allegation that Henry Worley was in the service or employment of the United States.

" 3. Because there is no such official as a United States deputy marshal, as charged in the indictment.

" 4. Because there is no such right and privilege secured by the Constitution and laws of the United States, within the meaning of sections 5508 and 5509 of the Revised Statutes of the United States, as that set out in the indictment.

" 5. Because there is no crime or offence charged in the said bill of indictment, of which the courts of the United States have jurisdiction."

The motion in arrest of judgment was overruled, and the defendants were sentenced to imprisonment in a penitentiary for the term of five years.

The second case was upon a motion in behalf of James McEntire and John H. Goble, and was similar to the first, except that no further proceedings had been taken upon the indictment, after the overruling of the demurrer.

Upon the filing of these motions, the Solicitor General suggested to the court, as reasons for exercising jurisdiction in this form, that the prisoners were in jail, and were too poor to pay the expenses of writs of error; and that it was important to settle, as soon as possible, the question whether they should be prosecuted in the courts of the United States, or in those of the State. And he joined with their counsel in requesting the court to allow the petitions to be filed, and to pass upon the merits of the questions involved.

*Mr. W. C. Glenn* and *Mr. D. W. Rountree* for the petitioners.

*Mr. Solicitor General* opposing.

Mr. Justice Gray, after stating the facts, delivered the opinion of the court.

These cases are governed by the principles declared and affirmed in *Logan* v. *United States*, 144 U. S. 263, 283–295, and in the earlier decisions there reviewed, the result of which may be summed up as follows:

The United States are a nation, whose powers of government, legislative, executive and judicial, within the sphere of action confided to it by the Constitution, are supreme and paramount. Every right, created by, arising under, or dependent upon the Constitution, may be protected and enforced by such means and in such manner as Congress, in the exercise of the correlative duty of protection, or of the legislative powers conferred upon it by the Constitution, may in its discretion deem most eligible and best adapted to attain the object. *United States* v. *Logan*, 144 U. S. 293.

Section 5508 of the Revised Statutes provides for the punishment of conspiracies " to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same."

Among the rights and privileges, which have been recognized by this court to be secured to citizens of the United States by the Constitution, are the right to petition Congress for a redress of grievances; *United States* v. *Cruikshank*, 92 U. S. 542, 553 ; and the right to vote for presidential electors or members of Congress ; *Ex parte Yarbrough*, 110 U. S. 651 ; and the right of every judicial or executive officer, or other person engaged in the service, or kept in the custody, of the United States, in the course of the administration of justice, to be protected from lawless violence. There is a peace of the United States. *In re Neagle*, 135 U. S. 1, 69 ; *United States* v. *Logan*, above cited.

It is the duty and the right, not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the *posse comitatus* in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offence against those laws ; and such information, given by a private citizen, is a privileged and con-

fidential communication, for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government. *Vogel* v. *Gruaz*, 110 U. S. 311; *United States* v. *Moses*, 4 Wash. C. C. 726; *Worthington* v. *Scribner*, 109 Mass. 487.

The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the Amendments to the Constitution, but arises out of the creation and establishment by the Constitution itself of a national government, paramount and supreme within its sphere of action. *United States* v. *Logan*, 144 U. S. 294. Both are, within the concise definition of the Chief Justice in an earlier case, "privileges and immunities arising out of the nature and essential character of the national government, and granted or secured by the Constitution of the United States." *In re Kemmler*, 136 U. S. 436, 448.

The right of the private citizen who assists in putting in motion the course of justice, and the right of the officers concerned in the administration of justice, stand upon the same ground, just as do the rights of citizens voting and of officers elected, of which Mr. Justice Miller, speaking for this court, in *Ex parte Yarbrough*, above cited, said : "The power in either case arises out of the circumstance that the function in which the party is engaged, or the right which he is about to exercise, is dependent on the laws of the United States. In both cases, it is the duty of that government to see that he may exercise this right freely, and to protect him from violence while so doing, or on account of so doing. This duty does not arise solely from the interest of the party concerned, but from the necessity of the government itself, that its service shall be free from the adverse influence of force and fraud practised on its agents, and that the votes by which its members of Congress and its President are elected shall be the free votes of the electors, and the officers thus chosen the free and uncorrupted choice of those who have the right to take part in that choice." 110 U. S. 662.

To leave to the several States the prosecution and punish-

ment of conspiracies to oppress citizens of the United States, in performing the duty and exercising the right of assisting to uphold and enforce the laws of the United States, would tend to defeat the independence and the supremacy of the national government. As was said by Chief Justice Marshall, in *McCulloch* v. *Maryland*, and cannot be too often repeated, " No trace is to be found in the Constitution of an intention to create a dependence of the government of the Union on those of the States, for the execution of the great powers assigned to it. Its means are adequate to its ends ; and on those means alone was it expected to rely for the accomplishment of its ends. To impose on it the necessity of resorting to means which it cannot control, which another government may furnish or withhold, would render its course precarious, the result of its measures uncertain, and create a dependence on other governments, which might disappoint its most important designs, and is incompatible with the language of the Constitution." 4 Wheat. 316, 424.

The suggestions made in the Circuit Court, and renewed in this court, " that there is no such official as a United States deputy marshal," and that the marshal and his deputies have nothing to do with enforcing the internal revenue laws, are sufficiently answered by referring to the statutes. The Revised Statutes provide that every marshal may appoint one or more deputies, removable from office by the District Judge or by the Circuit Court; and who take the like oath as the marshal; and for the faithful performance of whose duties the marshal is responsible upon his official bond. Rev. Stat. §§ 780, 782, 783. And by the act of March 1, 1879, c. 125, § 9, any marshal or deputy marshal may arrest any person found within his district in the act of operating an illegal distillery, and take him before a judicial officer. 20 Stat. 341, 342.

The necessary conclusion is, that it is the right of every private citizen of the United States to inform a marshal of the United States, or his deputy, of a violation of the internal revenue laws of the United States ; that this right is secured to the citizen by the Constitution of the United States ; and

that a conspiracy to injure, oppress, threaten, or intimidate him in the free exercise or enjoyment of this right, or because of his having exercised it, is punishable under section 5508 of the Revised Statutes.

According to the agreement of counsel, and in order that the judgment of this court may appear in regular form upon its records, leave is given to file the petitions. But, for the reasons above stated, the

*Writs of habeas corpus are denied.*

Mr. Chief Justice Fuller dissented.