BERTHA GABRIEL v. ETTA I. McMULLIN, Appellant.

**Privileged communications:** STATEMENTS TO COUNTY ATTORNEY. A
1 communication made by a prosecutor to a county attorney, relating to a charge of crime and the arrest and prosecution of the accused therefor, is privileged under Code, section 4608, in a subsequent action by the accused against the prosecutor for slander and malicious prosecution; and independent of the statute, the evidence should be excluded on the ground of public policy.

**Evidence:** OBJECTION: WAIVER. Where a general objection is made
2 to the offer of a certain class of incompetent evidence, failure to repeat the objection to each question as asked, is not a waiver of the former ruling admitting it.

**Malicious prosecution:** MALICE. In an action for malicious prose-
3 cution, no recovery of damages can be had without a finding of malice.

*Appeal from Mahaska District Court.*— HON. BYRON W. PRESTON, Judge.

WEDNESDAY, MAY 3, 1905.

SUIT to recover damages for an alleged slander and for a malicious prosecution. There was a trial to a jury, and a verdict and judgment for the plaintiff. The defendant appeals. *Reversed.*

*L. C. Blanchard,* for appellant.

*J. C. Williams* and *Davis & Orvis,* for appellee.

SHERWIN, C. J.— The petition was in two counts, the first alleging that the defendant had accused the plaintiff of the crime of larceny and had thus slandered her, and the second alleging that the defendant had instituted criminal proceedings against the plaintiff charging her with the same crime. The answer to both counts was a general denial. The jury found for the plaintiff on both counts, the sum of $800 on the first and $2,000 on the second. A motion for arrest of judgment and for a new trial was filed by the defendant. A new trial was denied, but the motion in arrest was sustained as to the finding on the first count of the petition, and the plaintiff was given leave to amend that count within a certain time. The motion was otherwise overruled, and a judgment was rendered against the defendant on the second count.

The plaintiff had been the defendant's housekeeper during her absence from home, and on her return, and after the plaintiff had left, she discovered that certain personal property had been taken from the house, whereupon she laid the matter before the county attorney of Mahaska county, Mr. J. A. Devitt, stated the facts to him and her belief that the property had been taken by the plaintiff, and asked him to have her arrested and prosecuted for the crime. Mr. Devitt, after several consultations with the defendant, had an information filed by a constable, and the plaintiff's arrest fol-

lowed. The prosecution was thereafter dropped for want of sufficient evidence to warrant further proceedings.

On the trial of this case, Mr. Devitt was called as a witness for the plaintiff, and, over the defendant's objection that her statements to him were privileged, and in reality against

1. PRIVILEGED COMMUNICA- TIONS: state- ments to county attor- ney. his protest, he was compelled to testify to the entire conversation between himself and the defendant relative to the charge against the plaintiff. It was prejudicial error to receive this testimony. The trial court evidently based its ruling on the thought that the relation of attorney and client did not exist between Mr. Devitt and the defendant, and consequently that the communication was not made in professional confidence, and was not incompetent under section 4608 of the Code. It is probably true that the relation of attorney and client, strictly speaking, did not exist, and yet we have held that the statute is broad enough to exclude just such testimony as was received in this case. In State v. Houseworth, 91 Iowa, 740, the county attorney was required to disclose what was said to him by the prosecuting witness relative to the commission of the offense and the defendant's participation therein. We held this error, and said, relative to the question of attorney and client:

> While it is true that, as to attorneys, such communications are oftener made by clients than by others we do not think there is any such limitation upon the operation of the statute, but that it matters not from whom the communication is received, if it be to a practicing attorney in his professional capacity, and necessary for him to discharge the functions of his office. Mr. Ranck was attorney for the State. What transpired at the time of the alleged offense was necessary and proper to enable him to discharge the duties of his office. His client could not communicate with him, and all communications must be from third parties. But the statute nowhere fixes the communication to be privileged as between attorney and client, nor is it there by any legal inference.

The rule thus announced was based upon the statute

alone, for we said further that we did not think it necessary
to consider the question from the standpoint of public policy.
The case was referred to and indirectly approved in *State v.
Swafford,* 98 Iowa, 362. A communication of the same
nature was under consideration by the Supreme Court of the
United States in *Vogel v. Gruaz,* 110 U. S. 311, (4 Sup. Ct.
12, 28 L. Ed. 158) and it was there held to be absolutely priv-
ileged, the court, speaking through Mr. Justin Blachford,
saying:

It was said to Mr. Cook while he was State's attorney,
or prosecutor of crimes, for the county, and while he was
acting in that capacity, if all this had taken place between
Bircher and an attorney, consulted by him, who did not
hold the public position which Mr. Cook did, clearly the
communication would have been privileged. Under the cir-
cumstances shown, Mr. Cook was the professional adviser of
Bircher, consulted by him, on a statement of his case, to
learn his opinion as to whether there was ground in fact and
in law for making an attempt to procure an indictment
against Gruaz. The fact that Mr. Cook held the position
of public prosecutor, and was not paid by Bircher for infor-
mation or advice, did not destroy the relation which the
law established between them. It made that relation more
sacred on the ground of public policy.

But aside from the statute, we think the rule of exclu-
sion should be applied to all matters concerning the admin-
istration of justice, on the ground of public policy. A
county attorney is an officer whose duty it is to investigate
crime and to prosecute therefor, not in the interest of the
individual who may have suffered, but for the good of the
state; and it is very clear to us that it is not only the priv-
ilege, but the duty, of every citizen who knows of facts tend-
ing to show the commission of a crime, to communicate such
information to the public officer whose duty it is to investigate
the matter and to commence a criminal prosecution if a crime
has been committed. Any other rule would hamper the ad-
ministration of justice. A party having knowledge of facts

tending to show that a crime has been committed will hesitate to lay such facts before the proper officer if the information thus given may be made the basis of an action for damages against him. *Vogel v. Gruaz,* supra. In *Worthington v. Scribner,* 109 Mass. 487 (12 Am. Rep. 736), an action for maliciously representing to the Treasury Department of the United States that the plaintiff was intending to defraud the revenue, it was held that the defendant could not be compelled to answer whether he gave to the department information of the plaintiff's intended fraud. And the principle there laid down was that in so doing he was doing no more than his duty as a citizen required. See authorities collected in that case, and also note in *O'Brien v. Spalding,* 66 Am. St. Rep. 213, and *in Re John M. Quarles,* 158 U. S. 532 (15 Sup. Ct. 959, 39 L. Ed. 1080), and *Abbott v. National Bank,* 20 Wash. 552 (56 Pac. Rep. 376). The fact that a third person was present during some of the conversations between Mr. Devitt and the defendant did not make Mr. Devitt's testimony competent. *Vogel v. Gruaz,* supra; *State v. Sterrett,* 68 Iowa, 76.

It is contended, however, that, inasmuch as the defendant did not make a specific objection to every question asked Mr. Devitt, she waived her former objection and the

2. EVIDENCE: objections; waiver.

privilege. But this cannot be so. The original objection raised the question of the competency of the testimony, and it was not necessary to incumber the record and take the time of the court with further objections of the same kind. It was an objection to a certain class of evidence, and a failure to repeat it as each question was asked the witness was not a waiver of the former ruling or of the privilege. *Salt Lake City v. Smith,* 104 Fed. 457 (43 C. C. A. 637); *Whitney v. Traynor,* 74 Wis. 289 (42 N. W. Rep. 267); *Sharon v. Sharon,* 79 Cal. 633 (22 Pac. Rep. 26, 131).

The trial court instructed, in effect, that there could be a recovery of actual damages for a malicious prosecution, even

thought malice were not shown.  It requires no citation of
authority to demonstrate the error in so doing.

3. MALICIOUS
PROSECUTION:
malice.

A malicious prosecution is what its name im-
ports, and malice must always be found before a
recovery can be had.  As the appellee expressly states in
argument that she claims nothing on account of the arrested
judgment on the first count, we need not further notice the
matter.

The appellant contends that errors were committed in
receiving other testimony, but, as they are not likely to arise
if the case should be again tried, we disregard them.

The motion to strike the first fifteen pages of the ap-
pellee's amendment to the abstract is sustained, and, for the
errors discussed, the judgment is reversed.