EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* A. QUINTANA REYES, acusado y apelante.

No. 3536.—*Sometido:* Diciembre 14, 1928. *Resuelto:* Febrero 20, 1929.

*R. Martínez Nadal* y *M. A. Martínez Dávila,* abogados del apelante;
*José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del
tribunal.

A. Quintana Reyes fué denunciado como autor de un de-
lito de libelo, por Pedro G. Quiñones, ante la Corte Muni-
cipal de San Juan. Resuelta la causa, se apeló para ante la
corte de distrito. Celebrado en ésta el juicio, se dictó sen-
tencia condenando al acusado, quien no conforme aún, apeló
para ante esta Corte Suprema, señalando en su alegato dos
errores, uno cometido a su juicio por la corte de distrito al
admitir como prueba el documento original del artículo di-
famatorio y otro al apreciar como constitutivos de delito los
hechos alegados en la denuncia y los demostrados por la
prueba.

Discutiendo el primero sostiene el apelante que la
corte erró al admitir como prueba el original del artículo li-
beloso por él firmado, porque la única evidencia que conecta
al apelante con la publicación del artículo es la declaración
del fiscal del distrito haciendo referencia a una conversación
que tuvo con el apelante de naturaleza privilegiada.

La prueba demostró que el Sr. Romanacce, Director del
periódico "J' Accuse" entregó al editor del mismo el escrito
original firmado por A. Quintana Reyes. Declaró además el
fiscal del distrito como sigue:

"Me llamo Marcelino Romaní y soy fiscal de este Distrito Judi-
cial. Un día se me presentó el señor Quintana Reyes en mi oficina
a hablarme de un asunto en relación con esto; él mismo, voluntaria-
mente, pero cuestión personal y privada; entonces él me expuso y
admitió en conversación particular conmigo, que era cierto que él
había publicado este artículo en el periódico 'J'Accuse,' por ciertas
razones que no son ahora para ser dichas aquí. Él me admitió que
este artículo lo había hecho él y que lo había mandado al periódico
'J'Accuse,' me dijo que por cierta declaración que había prestado el

señor Quiñones en un pleito civil, no recuerdo entre. qué partes. Nada más—Abo.—P.—Nada. Fis.—Presento como prueba el periódico, y este original.—Abo.—Nos oponemos porque entendemos que no ha sido identificada la firma del señor Quintana Reyes.—Fis.—Él admitió que era el autor de esto y que lo había publicado, y el señor Gotay admitió que este es el original del artículo.—Juez.—La Corte lo admite como el documento que sirvió para la publicación.——Abo. —Tomo excepción."

A nuestro juicio la declaración del fiscal era admisible.

En primer término, como sostiene el fiscal de esta Corte Suprema, en su alegato, si el acusado estuvo donde el fiscal del distrito no en su condición de fiscal sino en la de amigo y le hizo la manifestación referida, no vemos que la misma sea privilegiada, ya que no media entonces la relación que debe existir en esa clase de comunicaciones para que el privilegio exista, y en segundo término, si el acusado compareció ante el fiscal con motivo de la investigación que dicho funcionario practicaba en relación con los hechos por él realizados, la manifestación que le hiciera tiene el carácter de una admisión voluntaria perfectamente admisible.

Underhill, en su obra sobre evidencia Criminal, se expresa así:

" . . . . Pero cuando solamente se ha hecho un examen informal, o si los detalles de un examen ordinario y formal no se han tomado por escrito, o si los autos son inadmisibles por falta de jurisdicción o debido a irregularidades que aparecen de su faz, o por cualquier otra razón material o substancial, prueba oral de lo que el acusado voluntariamente dijo en el examen preliminar es admisible. Así, un Fiscal o Juez Instructor puede declarar verbalmente respecto a lo que se dijo en un examen preliminar celebrado con anterioridad a la investigación final. De la misma manera, prueba oral de una confesión extrajudicial nunca es inadmisible meramente porque el exámen judicial del acusado fué tomado por escrito o porque el acusado mismo haya hecho una confesión anterior escrita. Un Fiscal que oye una confesión puede declarar verbalmente sobre la misma. Su declaración verbal es la mejor prueba, aunque la confesión haya sido tomada por escrito por un taquígrafo en su presencia."

Invoca el apelante el caso de *Vogel* v. *Gruaz*, 110 U. S.

311. En él la Corte Suprema de los Estados Unidos estableció la siguiente doctrina:

"Una declaración hecha al fiscal del estado de Illinois cuyo deber es 'instituir y proseguir' todas las causas criminales, por una persona que solicita del fiscal que le informe si los hechos expuéstosle constituyen el delito de hurto, es una comunicación enteramente privilegiada y en un pleito de daños y perjuicios instituido contra esa persona por pronunciar palabras que imputaban el delito de hurto no pueden ser declaradas por el fiscal del estado. aunque haya prueba de que tales palabras fueron dichas a otras personas."

Basta la mera enunciación de la doctrina sentada para concluir que no es aplicable. Aquí no se trata de una consulta y de un pleito para recobrar dinero, sino de admisiones voluntarias hechas por el acusado al propio fiscal que investigaba la causa.

■ Examinemos el segundo error.

La denuncia es como sigue:

"Yo, Pedro G. Quiñones, abogado, vecino de San Juan, P. R., calle Sol número 35, de 36 años de edad, formulo denuncia contra A. Quintana Reyes, por un delito de libelo (Infracción al artículo 243 del Código Penal, misdemeanor) cometido de la manera siguiente: Que allá en o por marzo 12 de 1927, y en San Juan, P. R., el acusado suscribió y envió al periódico 'J'Accuse' que se edita en San Juan, un artículo titulado 'Los Manejos de un director de Banco. Argucias de la usura,' para ser publicado en el citado periódico, como efectivamente lo fué, habiendo circulado públicamente en esta ciudad, entre otros ejemplares, el marcado con el número 5 (edición de marzo 12, de 1927) de dicho periódico y forman parte de dicho artículo los siguientes párrafos:—'Pedro G. Quiñones, a pesar de sus tres títulos con que se anuncia, por su falta de capacidad para ganarse la subsistencia dentro del campo profesional, tiene que recurrir al no envidiable negocio de la usura. Este sujeto ha tenido la suerte de ser nombrado Director del BANCO MASÓNICO DE SAN JUAN, y aprovechándose de ese cargo se dedica a realizar préstamos usureros usando para ello los fondos de esa Institución. ¿Cómo? Como ya es conocido en ese negocio de la usura el que necesita un préstamo lo solicita de él y si las firmas ofrecidas son aceptables, pide la obligación firmada, acude al Banco Masónico con ella, la descuenta con su ciento y a veces a mayor tipo y sino entrega el Banco concede el

préstamo descontándole a su víctima por anticipado intereses al TRES o AL CINCO por ciento y a veces a mayor tipo, y sin sacar un centavo de su bolsillo realiza el préstamo con una ganancia pingüe. Así se puede ser Director de un Banco. Damos la voz de alerta al Banco porque suponemos que éste ignora los manejos de ese Director, y que creemos que una vez conocidos, que al enterarse los demás caballeros que forman en esa Directiva entre los cuales hay personas honorables, rehuyan su contacto y lo expulsen que es lo menos que podrían hacer. En la próxima daremos cuenta de otra acción sucia, pero muy sucia de ese Director actuando también o tomando el nombro de ese Banco.—A. Quintana Reyes.''

"Que los transcritos párrafos están suscritos por el acusado, siendo éste el único autor de los mismos y gestionó su publicidad con la maliciosa intención de difamar al denunciante Pedro G. Quiñones, abogado y Director del Banco Masónico de Puerto Rico, que ocupaba en aquélla y en la actualidad, el cargo de Director del Banco Masónico de Puerto Rico, exponiéndole al odio y ridículo público, siendo además, falsas las imputaciones que en dicho artículo se le hacen.''

Sostiene el apelante que esa denuncia es insuficiente porque no alega al final que los hechos son contrarios al estatuto para tal caso hecho y formulado y porque no expresa que el acusado voluntariamente publicara el referido libelo.

No debe perderse de vista que se trata de una denuncia y no de una acusación. Hubiera sido correcto que la denuncia terminara en la forma que el apelante sostiene que debió terminar, que es la consagrada por el artículo 72 del Código de Enjuiciamiento Criminal, pero lo verdaderamente importante es que los hechos constituyan un delito de acuerdo con la ley vigente al momento de su comisión. Y así es en efecto, consignándose además en este caso en los comienzos de la denuncia el nombre del delito y la ley que lo castiga.

■ Tampoco existe el segundo defecto apuntado. La denuncia se presentó de acuerdo con el artículo 243 del Código Penal que dice:

"Artículo 243.—Constituye libelo cualquiera maliciosa difamación expresada por medio de escritos, impresos, signos, láminas, dibujos, u otra forma análoga, tendentes a denigrar la memoria de un difunto, o impugnar la honradez, integridad, virtud o buena fama de un

vivo, o publicar sus defectos naturales o supuestos, exponiéndole así al odio, desprecio o ridículo público.''

No se trata de la publicación voluntaria a que se refiere el siguiente artículo del Código Penal estatuido para abarcar el caso de los editores de los periódicos, por ejemplo, en que no se necesita que actúen *maliciosamente,* bastando que lo hagan *voluntariamente* para que se entienda que cometen el delito de libelo en esa otra forma.

 La prueba es suficiente. El acusado trató de justificar su actuación. A este respecto se expresa la corte sentenciadora así:

''El acusado trató de probar la certeza de sus imputaciones, o sea que el denunciante, siendo un abogado, y no teniendo capacidad para ganarse la subsistencia dentro del campo profesional, ha recurrido a la usura, aprovechándose para ello del cargo de Director del Banco Masónico de San Juan y realizando préstamos *usereros,* con los fondos de esa institución, sin sacar un centavo de su bolsillo, con una ganancia pingüe; pero la verdad de estas imputaciones no se ha demostrado, ni tampoco que la publicación se hiciera con sana intención y para fines justificables.''

Hemos examinado la evidencia y estamos conformes con el criterio del juez de distrito.

*Debe confirmarse la sentencia recurrida.*