John L. BROADWAY et al., Plaintiffs,

v.

CITY OF MONTGOMERY, ALABAMA, et al., Defendants.

Civ. A. No. 74-16-N.

United States District Court,
M. D. Alabama, N. D.

Sept. 13, 1974.

Robert D. Segall, Montgomery, Ala., for plaintiffs.

Joseph D. Phelps, and Frank W. Riggs, Montgomery, Ala., for defendants.

## SUMMARY JUDGMENT

VARNER, District Judge.

This cause is submitted on motion for summary judgment filed by the Defend-ants. Plaintiffs seek to recover damages from the City of Montgomery and several police officers and an injunction for violation of their rights not to have their wire or oral communications (telephonic communications) intercepted within the prohibition in 18 U.S.C. §§ 2510–2520. It is also submitted upon the Plaintiffs' motion for leave to amend and add Robert D. Segall as a party Plaintiff. The Plaintiffs' motion for leave to amend shall be granted.

Section 2520 provides for recovery of civil damages, in pertinent part, as follows:

"§ 2520. Any person whose wire or oral communication is intercepted, disclosed or used in violation of this chapter ·shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose or use such communications, and (2) be entitled to recover from any such person—

"(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000 whichever is higher;

"(b) punitive damages; and

"(c) a reasonable attorney's fee and other litigation cost reasonably incurred."

For there to be a cause of action, a person's wire or oral communication must be "intercepted, disclosed, or used in violation of the chapter". Defendants, by affidavit, deny that they intercepted, disclosed or used such communications. There is no evidence that any communication was disclosed or used by any Defendant in this case. The word,

" 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Aural is defined as "of, or perceived by, the organs of hearing". American College Dictionary, Random House. The evidence was that an interception device

was installed on the telephone of Mr. Graham and Mr. Broadway and that the recording device thereon recorded some messages between some of the Plaintiffs and possibly other persons. There may be a question whether this wire tap ever reached the stage of being aurally received by any Defendant. For reasons herein set out, it is unnecessary that this Court approach this question.

■■■ This Court notes in passing that there is no evidence before the Court that the communication of any of the Plaintiffs other than Mr. Graham, Mr. Broadway and possibly Mr. Segall were intercepted, in any event. Defendants deny receiving such communications. The only evidence relating to other Plaintiffs was evidence that one or more of such Plaintiffs stated that they talked to Mr. Graham or Mr. Broadway over the telephone in question at about the time that the wire tap was installed. The Court also notes that a municipality is officially immune from suit for damages for a tort of its servant or agent. No vicarious liability accrues against an arm of the State. Constitution, Eleventh Amendment; Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596.

Both Defendants Lisenby and Terry have denied in evidence submitted on motion for summary judgment that they placed the wire tap on Plaintiff Broadway's telephone. The only evidence which the Plaintiffs have submitted against them is a conclusory allegation of the Plaintiffs' attorney and the deposition of Judge Crosland, who states that Terry,

"said that he did not know the tap had been put on until after it had been put on, and then that Lisenby told him that a tap had been put on; and Terry said that he should have told him to take it off."

■■■ Conclusory allegations of an attorney as to what he expects to prove

are not properly considered as evidence on submission of motion for summary judgment. Automatic Radio Manufacturing Co. v. Hazeltine, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312.

■■■ The Defendants contend vigorously, and with substantial reason, that the statement made by Detective Terry, allegedly implicating himself and Detective Lisenby in the maintenance of the wire tap, is not admissible for the reason of privilege. They point out that the Supreme Court recognized such privilege and applied it in a similar case. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158. Alabama law appears to be in accord. American Surety Co. v. Pryor, 217 Ala. 244, 250, 115 So. 176.[1] In *Vogel*, a person claiming to be the victim of a larceny presented his case against the alleged thief to the prosecuting attorney who referred him to the grand jury. Upon termination of the criminal case, the defendant in the criminal case sued the complaining witness for defamation in the oral presentation made to the prosecuting attorney. In holding the conversation privileged, the Supreme Court made the following observations:

"Mr. Cook was the professional adviser of Bircher, consulted by him, on a statement of his case, to learn his opinion as to whether [or not] there was ground in fact and in law for making an attempt to procure an indictment against Gruaz. The fact that Mr. Cook held the position of public prosecutor, and was not to be paid by Bircher for information or advice, did not destroy the relation which the law established between them. It made that relation more sacred, on the ground of public policy. The avenue to the grand jury should always be free and unobstructed. Bircher might have gone directly before it, without consulting with Mr. Cook, but, if he chose to consult him, instead of a

1. In federal courts privilege is determined under State law. Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U.S. 250, 5 S.Ct. 119, 28 L.Ed. 708.

private counsel, there was great propriety in his doing so. Any person who desires to pursue the same course should not be deterred by the fear of having what he may say in the confidence of a consultation with a professional adviser, supposed to be the best qualified for the purpose, disclosed afterwards in a civil suit, against his objection. * * * it was the province and privilege of any person who knew of facts tending to show the commission of a crime, to lay those facts before the public officer whose duty it was to commence a prosecution for the crime. Public policy will protect all such communications, absolutely and without reference to the motive or intent of the informer or the question of probable cause; the ground being, that greater mischief will probably result from requiring or permitting them to be disclosed than from wholly rejecting them."

While the circumstances of these two cases are strongly parallel,[2] certain differences warrant this Court's consideration. Unlike the complaining witness in *Vogel,* Detective Terry did not go to the prosecutor for the purpose of reporting the criminal activities of a third party and having such party prosecuted. He went to Mr. Crosland for the purpose of avoiding such consequences as might reasonably be expected to follow the allegedly illegal conduct on the part of Mr. Lisenby, in view of Terry's having known thereof and his not having told Lisenby to terminate it. The privilege [3] is available in the *Vogel* case because of the strong public policy of protecting those reporting possible violations of law to public prosecutors. Detective Terry, while seeking to enforce the drug law, was arguably seeking to avoid the law relative to illegal wire taps and his conversation was arguably not within the public policy of enforcing that law and, therefore, not within the protection of the attorney-client privilege.

This argument, however, loses face in the light of the last sentence of the above quotation from *Vogel,* in pertinent part, as follows:

> "Public policy will protect all such communications * * * without reference to the motive or intent of the informer * * *."

The Court makes it plain that the public policy (that persons reporting crimes to public prosecutors be unfettered in their conversations) is so important that they are protected by the privilege no matter how evil their purpose. Public policy requires that avenues of information to prosecutors remain open. If informers cannot rely upon secrecy of their disclosures, these avenues of information will tend to be closed. It is better that false informers be protected than that bona fide informers be subject to civil or criminal prosecutions should their information be unprovable. Even those maliciously and falsely accusing others of criminal conduct with the deliberate purpose of falsely causing false and malicious prosecutions and sentences of innocent persons are protected by the privilege. Those who seek to secrete their own crimes by reporting falsely that others committed the acts are likewise sheltered. The naive casual informer, who inadvertently discloses to a prosecutor evidence of a crime without knowledge that a crime has been committed, is also protected. The public necessity of a prosecutor's receiving such information justifies the protection of all those giving such information "without reference to the motive or intent" of the informer.

---

2. According to the witness in the instant case, Mr. Terry did report evidence of the federal wire tap crime to the District Attorney of Montgomery County, Mr. Crosland, and Mr. Crosland did refer the matter to the United States Attorney (rather than to the grand jury).

3. There is a distinction between the "privilege" which is a defense to defamation suit and the "privilege" which bars repetition of conversations considered so private that public policy demands their suppression as evidence. The distinction is not apparently made in Vogel v. Gruaz, supra.

It is, therefore, the opinion of this Court that the conversation between Mr. Terry and Judge Crosland (then District Attorney) is cloaked with privilege and unavailable as evidence in this case unless such privilege was waived.

■■ Plaintiffs insist that the fact that Detective Terry testified that he had not stated to the prosecutor that he knew of and did not terminate the wire tap was a waiver of his privilege. It was held in Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054, that a criminal defendant, claimant of the privilege against taking the stand, who voluntarily takes the stand on direct examination and denies that he made an incriminating statement to a witness, subjects himself to searching cross-examination, he having waived the benefit of the Fifth Amendment privilege by voluntarily taking the witness stand. That case and the privilege it represents are not determinative of this case. Raffel was a volunteer witness represented by counsel and had abandoned his privilege not to testify in order to obtain the benefits of his testimony. Here, the Defendant Terry was required to testify in a separate case; he had no right to refuse to answer questions asked of him; and he was not a party and was not represented by counsel when he denied the conversation with the prosecutor. He was not present in the courtroom when the prosecutor testified about his statement, and if he had been present, he would have had no status to object to questions asked the former prosecutor relative to the conversation with Terry. It has been held that there is no waiver of the attorney-client privilege if the client is not a party to the proceeding or is not present when the attorney testifies to the privileged communications. 58 Am.Jur. 294. A waiver extends no further than the subject matter concerning which testimony was given by the client, 58 Am.Jur. 295, and testimony regarding merely preliminary matter to the privileged communication is no waiver of privilege. 58 Am.Jur. 294. In any event, it appears that in Alabama the failure to claim privilege or object to inadmissible evidence on one occasion does not necessarily bar the right to insist upon the defect at a later time. Lowery v. Jones, 219 Ala. 201, 121 So. 704. The Plaintiffs also argue that Detective Terry, subsequent to the alleged conversation with then District Attorney Crosland, discussed the substance of that conversation with a newspaper reporter and that, due to said disclosure, he has waived his right to assert his privilege. In support of this contention, the Plaintiffs cite Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, which narrowly holds that, in certain situations where evidence against a criminal defendant was provided by a confidential informant and the government insists upon the privilege of not revealing the identity of the informant, the identity of the informant must nevertheless be revealed. In discussing the situations in which identity must be revealed, the Court in dictum mentioned that, once the identity of the informant has been disclosed by the police or by the informant himself, the policy behind keeping the identity secret ceases to exist. The Plaintiffs attempt to apply that dictum to the facts of this case.

Even if the Roviaro decision had been based upon this rationale, and it was not, this rationale would not apply to the instant case. Testimony taken of the reporter who discussed the Crosland conversation wtih Terry revealed that Terry denied having made any such statements to Crosland and that he considered Crosland's assertions as political daggers. The dictum of Roviaro states that the policy behind keeping the identity secret would cease to exist if the identity were once disclosed. Applying that language to this case, the Court is compelled by logic to rule that the substance of the alleged conversations as the Plaintiffs describe it has never been revealed by any person with the right to relinquish the defendant's privilege of nondisclosure. The policy behind keeping the alleged

conversations confidential, that is, the need to insure an informant that he will not be successfully sued if information given the prosecutor turns out unfortunately for the informer, still exists in this case.

This Court, therefore, concludes that the failure of Detective Terry, appearing as a witness in a criminal hearing and without personal counsel, to claim the attorney-client privilege and his statement to outside sources that he did not admit to Crosland certain knowledge of and responsibility for the failure to remove the wire tap did not waive his right to claim the privilege in a civil trial at a later time. It is, therefore, unnecessary to consider whether the statement by Detective Terry is inadmissible in evidence as hearsay as against either of the Defendants.

█ The Defendants, having stated substantial evidence of their innocence in their motion for summary judgment and the exhibits thereunto incorporated, and the Plaintiffs, having offered no substantial admissible evidence to the contrary, there appears to be no material issue of fact for the Court to decide. Accordingly, summary judgment will be entered in favor of all Defendants in this cause. It is

Ordered, adjudged and decreed by the Court that the Plaintiffs' motion for leave to amend the complaint by adding a party Plaintiff be, and the same is hereby, granted, and the said Robert D. Segall is hereby added as a party Plaintiff to this cause of action. It is further

Ordered, adjudged and decreed by this Court that the Defendants' motion for summary judgment be, and the same is hereby, granted, and summary judgment is hereby entered in favor of all Defendants. It is further

Ordered that the costs of this action be, and the same are hereby, taxed against the Plaintiffs.