M, By his parents R and S, Plaintiff,

v.

BOARD OF EDUCATION BALL–CHATHAM COMMUNITY UNIT SCHOOL DISTRICT NO. 5, Chatham, Illinois, Harold J. Hoskins, Glenn C. Vancil, Charles A. Chapin, William A. Gregurich, Robert E. Craven and James K. Lovelace as members of the Board and Individually, William J. Hovey as Superintendent and Individually, and Michael A. Collins as Assistant Principal, Glenwood Senior High School, Chatham, Illinois, and Individually, Defendants.

No. 77–3035.

United States District Court,
S. D. Illinois, S. D.

Jan. 16, 1978.

Ronald L. Maksym, Leahy & Maksym, Springfield, Ill., for plaintiff.

Alfred B. LaBarre, Ensel, Jones, Blanchard & LaBarre, Springfield, Ill., for defendants.

## MEMORANDUM ORDER

J. WALDO ACKERMAN, District Judge.

Plaintiff, M, is seeking equitable relief and civil damages under 43 U.S.C. § 1983 for alleged violations of his constitutional rights in the events leading up to his expulsion from Glenwood Senior High School. M's request for preliminary injunctive relief was denied by this Court's Order of March 16, 1977, 429 F.Supp. 288 (1977). Among the Court's preliminary findings in that order was that defendant Michael A. Collins had sufficient cause to enable him to search

student M for drugs. Presently before this Court is a motion by M to allow discovery of the student informer upon whose information and reliability Collins based his cause to search.

Mr. Collins, an assistant principal of Glenwood High School, testified at a hearing on the motion for preliminary injunction. Under questioning, Collins related two prior instances where the student informant had come forth with information which was valuable in student discipline cases. Collins also related the substance of the conversation he had with the student regarding the possession of drugs or exchange of money by certain other students in study hall. Collins declined to name the informant and testified regarding the possible danger to the informant should his name be revealed.

Plaintiff's basic argument is that since one of the critical issues in this case is whether Collins had the necessary cause to make the search, and since the sole basis for the search was a communication from an informant, it is essential to discover from the informant what he told Collins on this and prior occasions. Plaintiff further contends that there is no authority under F.R. Civ.P. 26 for denying the disclosure of the informant's identity. Plaintiff claims any potential danger to the informant can be abrogated or ameliorated by protective order.[1] Defendant relies on a common law privilege recognized for the identity of persons supplying the Government with information concerning the commission of crimes.

█ Privileged matter is an exception to the general rule allowing discovery of relevant matter. F.R.Civ.P. 26(b)(1). The parties have not cited, nor has research revealed any cases specifically dealing with the informant's privilege in a civil suit arising from a school discipline situation. Thus I shall first analyze the nature and scope of the informant's privilege and its applicability to the present fact situation.

---

1. Plaintiff seeks to depose the informant and suggests that the deposition can be taken without disclosing the identity of the informant to plaintiff's attorney. It is further proposed by plaintiff that no action would be taken which would disclose the informant's identity without further order of this Court.

### Informant's Privilege

The Government's privilege to refuse to reveal the identity of informants in criminal matters is well established in the United States. On several occasions the Supreme Court has recognized the privilege and applied it to various factual situations. If anything, the scope of the privilege has appeared to broaden as the need for informants as a means of fighting crime has increased. In both of the early cases of *Vogel v. Gruaz,* 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158 (1884) and *In Re Quarles and Butler,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895), the identity of the informant· was known. *Vogel* was a case where an informant was being sued on the basis that his allegations to the State's Attorney regarding plaintiff were defamatory. The Supreme Court found that the State's Attorney's testimony at trial was in violation of the usual attorney-client privilege. The Court also enunciated that it was the duty of every citizen to communicate to his Government any information he has of the commission of an offense against its laws and such communication is privileged unless the Government permits it to be disclosed. *In Re Quarles and Butler* was a habeas corpus petition by two people indicted and convicted for threatening and intimidating a person who had reported them for violating the Internal Revenue laws. The Court found that the duty of a citizen to communicate violations of the law to appropriate authorities, as alluded to in *Vogel,* was also a right protected by the Constitution. It was a criminal violation for people to conspire to prevent or punish an individual's exercise of that right.

*Scher v. U. S.,* 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938), was the first case found in which the Supreme Court dealt with an unidentified informant situation. Federal officials had received confidential information, thought reliable, that Scher was transporting liquor without required revenue stamps. After observing the suspect for a period of time, the officials stopped him without a warrant and proceeded to search his trunk, finding the unlicensed liquor. The motion to suppress was denied by the trial court on the basis that the observations gave probable cause for a stop independent of the informant's information. The Supreme Court affirmed, and in dicta the Court said "public policy forbids disclosure of an informer's identity unless essential to the defense, as, for example, where this turns upon an officer's good faith." *Id* at 254, 59 S.Ct. at 176.

Almost twenty years later the Supreme Court expounded on the informant's privilege in *Roviaro v. U. S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Court held it was reversible error for the Government to refuse to disclose the identity of an undercover employee who had taken a material part in bringing about possession of certain drugs by the accused, had been present with the accused at the occurrence of the crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged. The informer's privilege was defined as "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crime to law-enforcement officials and, by preserving their anonymity encourages them to perform that obligation." *Roviaro* at 59, 77 S.Ct. at 627. The Court went on to say that the scope of the privilege is limited by its underlying purposes: (1) where disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged; (2) once identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable (*c. f., Vogel and In Re Quarles and Butler, supra.*); (3) where the disclosure of an informer's identity or contents of a communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privi-

lege must give way. (Compare the statement in *Scher, supra.*)

The Court found that the *Roviaro* situation fell within the third exception, but felt that no fixed rule requiring or preventing disclosure of the informant's identity was justifiable. Rather, the Court held that in each case there must be a balance of the public interest in protecting the flow of information against the individual's right to prepare his defense. In dicta, however, the Court said that in cases where the issue was the legality of a search without a warrant and communications of an informant were the sole basis for probable cause, the Government was required to disclose the identity of the informant, citing *Scher*.

That precise issue was squarely before the Court in *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Petitioner was indicted and convicted in an Illinois State Court for unlawful possession of heroin. Prior to trial he filed a motion to suppress the heroin as evidence on the basis it was acquired during an unlawful search. The warrantless search was by police officers acting on a tip from an unidentified informant who told them that McCray was selling narcotics, had narcotics in his possession and would be at a particular place at a particular time. The informant and police officers drove to the location where the informant pointed out McCray and then departed. The officers observed McCray for a brief period and then arrested and searched him. Both officers testified they had dealt with the informant on many occasions over a year or more and had been supplied with the accurate information leading to arrest and conviction on many occasions. The State Court held that under those circumstances the informant's information along with the officers' personal observations were sufficient for probable cause. Petitioner contended that even though the officers' sworn testimony would support a finding of probable cause for arrest and search, the Constitution required disclosure of the informant.

The Supreme Court upheld the state court decision. When the issue is not guilt or innocence, but rather the question of probable cause for arrest or search, police officers need not invariably be required to disclose an informant's identity. The test is whether the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did in fact rely in good faith upon credible information supplied by a reliable informant. The reasoning for the rule was set forth by the Supreme Court through extensive quotation from Chief Justice Weintraub's opinion in *State v. Burnett,* 42 N.J. 377, 201 A.2d 39:

> The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an *ex parte* proceeding. As we have said the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he told. If the magistrate doubts the credibility of the affiant, he may require that the informant be identified or either produced. It seems to us that the same approach is equally sufficient where the search was without a warrant, that is to say, that it should rest entirely with the judge who hears the motion to suppress, to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness.

*McCray,* at 307–308, 87 S.Ct. at 1060.

The Supreme Court found no support for McCray's contention that the Constitution prohibited the State from allowing their judges the discretion to refuse to reveal an informant's identity in such situations. While the Court was specifically dealing with the Sixth and Fourteenth Amendments due process requirements, a strong dissent evidences the consideration of possible Fourth Amendment objections. The dissentors stated that the Fourth Amendment prevents a situation in which the police may become the arbitrators of probable cause, and would require the informer to be

produced at trial and undergo cross-examination.

### Privilege's Application

The question now becomes whether the privilege is available to the high school assistant principal in this case. As stated in Wigmore on Evidence:

The privilege applies to communication to such officers only as have a *responsibility or duty* to investigate or to prevent public wrongs and not to officials in general. This ordinarily signifies the *police* and officials of *criminal justice* generally. But it may also include *administrative officials* having a duty of inspection or of law enforcement in their particular spheres. The truth is that the principle is a large and flexible one. It applies wherever the situation is one where without this encouragement the citizen who has special information of a violation of law might be deterred otherwise from voluntarily reporting it to the appropriate official.

8 *Wigmore Evidence,* § 2374, pp. 767–768 (McNaughton Rev. 1961).

█  Under Illinois law the school principal assumes administrative responsibilities for operation of the attendance area in accordance with reasonable rules and regulations of the school board and under the supervision of the superintendent. Ill.Rev. Stat. ch. 122 § 10–21.4a. The school board can authorize the school principal to suspend pupils guilty of gross disobedience or misconduct. Ill.Rev.Stat. ch. 122 § 10–22.-6(b). Teachers and other certified educational employees (*i. e.,* school principal and assistant principals) shall maintain discipline in the schools. Ill.Rev.Stat. ch. 122 § 24–24. From these statutory provisions, it is apparent that the assistant school principal as a chief administrative officer within the school, has the daily responsibility of protecting to the extent possible the health, safety and welfare of the students within

that attendance center. This responsibility includes the prevention of violation of school board rules and other public wrongs within the school.

It is a known fact that illegal drugs are being used and sold by some members of our society and it seems fair to assume that this behavior sometimes occurs in the schools. While the apprehension of adult offenders is of concern to our criminal system, the prevention of consumption and sale among the youth of our grade schools and high schools is of an urgent nature. It goes without saying that drugs within the school have seriously harmful effects to the educational process as well as to the young people involved.

█  Both reason and law establish the authority and responsibility of the assistant school principal. Recognizing the public policy of eradicating the effects of illegal drug use and sale in our school system, I must look to the particular situation of the student informer in these circumstances. This is a situation in which it is important that the identity of the informant remain privileged. As the Supreme Court alluded to in its early opinions, a citizen has the right and the duty to report violations of public laws to the appropriate officials. A student, such as the one in the present case, should be able to come forward with information to the assistant principal regarding such activity and the student should not have to fear revelation of his name and the subsequent social ostracism and possible physical danger. In my opinion the privilege may be available to a high school assistant principal in such situations.

█  Having decided that the informant's identity privilege may apply, I must finally decide whether any of the *Roviaro* exceptions apply. The situation in this case is very analogous to the Supreme Court decision in *McCray.*[2] The student informant's information went only to the circumstances which the principal considered in determin-

---

**2.** It would defeat any protection the informant may have under *McCray* if the accused could file a subsequent civil rights action against the official and then seek discovery of the infor-

mant. The availability of this indirect method of discovering the informant's identity would clearly frustrate the policies advanced by the privilege.

ing whether to search M. It is not contended that the student informant was a participant in the illegal activity, was a witness at the search, or had any further knowledge of the circumstances which led to the dismissal of M. In these circumstances I cannot find that any of the exceptions as outlined in *Roviaro* have been met. I will thus deny the motion by M to compel the deposition of the informant in this case.