**UNITED STATES v. DEERE & CO. et al.**

**UNITED STATES v. INTERNATIONAL HARVESTER CO.**

**UNITED STATES v. J. I. CASE CO.**

Civ. Nos. 2832–2834.

United States District Court
D. Minnesota, Fourth Division.

Nov. 9, 1949.

2. 28 U.S.C.A.

The above cases came before the Court on motions by defendants to require plaintiff to produce certain documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Thomas L. Marshall, of Chicago, Ill., C. A. Taney, Jr., of Minneapolis, Minn., and Wayne G. Cook, of Davenport, Iowa, for Deere & Co. et al.

Edward R. Johnston and Albert E. Jenner, Jr., both of Chicago, Ill., and George W. Morgan, Cleon Headley and Samuel H. Morgan, all of St. Paul, Minn., for defendant International Harvester Co.

D. C. Edwards, of Minneapolis, Minn. (Clark M. Robertson of Milwaukee, Wis., M. Dana Nicholson and Nichols, Mullin & Farnand, all of Minneapolis, Minn., of counsel), for defendant J. I. Case Co.

Melville C. Williams, Ewart Harris, John M. Anderton, Charles W. Houchins, and Emory W. Reisinger II, all of Chicago, Ill., for plaintiff.

NORDBYE, Chief Judge.

These are separate anti-trust cases. Generally speaking, plaintiff charges in each case that defendant tried to compel dealers in its implements to handle only that particular defendant's line of farm machinery and cancelled the dealership contract of dealers who refused to accede to such demands. Plaintiff seeks an injunction enjoining these practices. No conspiracy is charged.

Preliminary motions have been made by both sides in these cases. And pursuant to an interrogatory submitted by plaintiff in each case to the defendant, each defendant was required to furnish plaintiff with

the names of dealers whose dealership had been cancelled or not renewed during a specified period. Plaintiff's counsel sent a five-page questionnaire to each of these former dealers with a letter requesting answers to the questions. The questions concerned the circumstances under which the dealer's contract had ended, and his dealing with the defendant involved. Answers were received by plaintiff from many of those former dealers, and plaintiff now states that some of the answers are helpful to its alleged causes of action. Some of them are not helpful, plaintiff admits. The defendant in each case now moves the Court under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to compel plaintiff to permit defendant to inspect and copy all the answers which plaintiff received from that defendant's former dealers as a result of the questionnaire. Each defendant also seeks to inspect and copy answers which certain dealers made in response to a letter which plaintiff's counsel sent such dealers inquiring about the handling of competitive lines and concerning his business dealings with a specified defendant.

Plaintiff objects to producing the answers to either the questionnaire or the letter upon two grounds: (1) the answers are privileged; (2) the answers are not subject to production because (a) they resulted from the work product of plaintiff's lawyers and (b) defendants have not shown the "unusual circumstances" necessary to require production of such documents.

Rule 34 provides: "Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody, or control; * * *."

Rule 26(b) provides: " * * * the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff contends that the answers involved are privileged because the information was given the Government in its investigation. The United States Supreme Court has declared in Re Quarles, 1895, 158 U.S. 532, 15 S.Ct. 959, 961, 39 L.Ed. 1080: "It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the posse comitatus in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a privileged and confidential communication, * * * the disclosure of which cannot be compelled without the assent of the government. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12, [28 L. Ed. 158]; U. S. v. Moses, 4 Wash.C.C. 726, Fed.Cas.No. 15,825; Worthington v. Scribner, 109 Mass. 487, [12 Am.Rep. 736]."

And in Arnstein v. United States, 54 App.D.C. 199, 296 F. 946, at page 950, the Court of Appeals for the District of Columbia held: "The principle laid down in that case * * * was that is it the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws, and that a court of justice will not compel or allow such information to be disclosed, either by the subordinate officer

to whom it is given, by the informer himself, or by any other person, without the permission of the government, the evidence being excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications." (Citing cases.)

There is no doubt that this rule would not apply to many cases involving the Government where the latter seeks to protect no public interest as such. Actions under the Anti-Trust Acts, however, are clearly actions based upon the public interest. This is apparent from the very nature of the laws. For they are designed to protect the commerce of the Nation, and their violation in many instances constitutes criminal activity. Although the instant action is not a criminal action, the basis of the privilege is one of public policy for protection of the public interest, not the criminal nature of the case. It is not for the protection of any person. The considerations which require the withholding of information and its source from the accused by the Government in criminal cases are present also in civil anti-trust actions brought for the public interest by the Government. Without the anti-trust laws and resulting actions to enforce them, monopoly would strangle competition and threaten the Nation's economic well-being. Encouraging such information from the citizenry on such matters is just as important and emphatic as encouraging information of violations of the criminal laws of the Nation. The public interest and welfare is the object of protection. The civil anti-trust case of United States v. Kohler Co., D.C.E.D.Pa., 1949, 9 F.R. D. 289, recognized the rule of privilege and held that defendant there could not obtain from the Government the answers given to the Government by persons not parties to the action in the course of the investigation.

If defendants here were given the answers they seek, they would be able to know what each dealer told the Government. They would be infringing upon the confidential relationship which necessarily must exist between the Government and its source of information. It is that relationship which creates the privilege, as noted in the Arnstein case, supra. To ignore that privilege here would place defendants in that same confidential relationship with the Government's source of information, and would be allowing the defendants to take advantage of matters which public policy has determined should be protected for the benefit of the Government.

Defendants cite numerous cases in opposition to plaintiff's authorities. But none of them are controlling herein. In United States v. Andolschek, 2 Cir., 142 F.2d 503, the Government was seeking to avoid producing records which were related to the offense. They apparently were records which were made in an official capacity by the accused and which bore upon the alleged crime. The court held that the records must be produced at trial because of their relation to the alleged crime. The court did not hold that defendant was entitled prior to trial to any statements given to the Government concerning the alleged crime by persons other than defendant. Such statements were not involved in the Andolschek case.

Dugger v. Baltimore & Ohio Ry. Co., D.C., 5 F.R.D. 334, did not involve an action by the Government for the public interest. Cogdill v. T. V. A., D.C., 7 F.R. D. 411, was a case which is distinguishable like the Dugger case. In Bowles v. Ackerman, D.C., 4 F.R.D. 260, the defendant's own records were involved. Defendant there did not seek, as does defendant here, information obtained from other persons by the Government. The purpose of the privilege here cited by the Government did not exist there. See 8 Wigmore on Evidence, p. 755. Walling v. Richmond Screw Anchor Co., D.C., 4 F.R.D. 265, is distinguishable clearly on its facts. There, the court granted the defendants the right to the names of the employees who the Government contended were not paid in accordance with the Wage and Hour Act, 29 U.S.C.A. § 201 et seq. Defendant there was not granted the right to statements made by employees or the names of the

employees who gave the Government information. In fact, defendant was denied that information. The court held it privileged. And that is the information which defendants here seek. They seek the names of the former dealers who complained or did not complain, together with the information each gave concerning the matters upon which plaintiff bases this action for violation of the anti-trust law. The Richmond case actually is authority, by analogy, against defendants, not for them. Fleming v. Bernardi, D.C., 1 F.R.D. 624, and United States v. General Motors Corps., D.C., 2 F.R.D. 528, also are distinguishable upon their facts so that the general statements made therein are not helpful.

■ Defendants contend that the purpose of privilege does not apply to these cases in that they know the names of the former dealers whom the Government contacted, and therefore it is urged that the doctrine of privilege does not protect them. But the purpose of privilege is not lost merely because defendants may know from whom the Government may inquire. The doctrine of privilege is based upon the principle that the confidential relationship between the Government and those who impart information to the Government regarding law violations should be safeguarded in order that such information will be freely given and will continue to be given in the future. The breach of such confidential relationship by divulging information given may seriously impede the Government's efforts in other similar investigations. Moreover, the fact that some of the former dealers who have answered the questionnaire may be called as witnesses and thus be required to publicly divulge in substance all or a part of the information imparted in their answers does not mean that the privilege is waived in so far as the present motion is concerned. It is the statements made by these individuals under the circumstances indicated which the defendants now seek to inspect and copy. It is these statements as such which are privileged. Rule 34 specifically limits the inspection and copying of documents to documents "not privileged."

■ In view of this conclusion, determination of plaintiff's second ground of objection may not be necessary. However, it may not be amiss to express my views thereon. In Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 388, 91 L.Ed. 451, the Supreme Court held that one party to an action is not entitled to obtain under a discovery proceeding the "work product" of the adverse party's attorney unless unusual circumstances are present. This is the rule upon which plaintiff's second objection is based. In the Hickman case, the defendant's tug boat had sunk. Several of its crew members were killed. Subsequently, a hearing was held by the United States steamboat inspectors, and all of the testimony, including that of the survivors, was made available to interested persons. Defendant's counsel in that case subsequently talked personally with the survivors in private conversation and they signed statements as to what happened at the time of the accident. He also talked with other persons who had information and he made memoranda of what they told him. In proceeding under Rule 34, plaintiff sought copies of the statements and of the memoranda which defendant's counsel had obtained and written. The Supreme Court denied the demand upon the ground that the information constituted the work product of defendant's counsel and hence was privileged.

■ As the Supreme Court recognized in Hickman v. Taylor, the term "work product of a lawyer" cannot be defined precisely. It must be applied in light of the particular facts which are presented. In the instant case, the proceedings were commenced in September, 1948. Answers were thereafter filed and the cases became at issue. Interrogatories were served thereafter by the defendants and by plaintiff, and after various objections and rulings thereon, answers to the interrogatories were filed. As heretofore indicated, it was in response to plaintiff's interrogatories that defendants furnished plaintiff with the list of the former dealers and it was to these dealers that questionnaires were sent by the plaintiff. The attorneys assigned to the Anti-trust Division of the Government,

who have been in active charge of these proceedings from their inception, framed the questionnaire and the accompanying letter to the former dealers. The letter was signed "Herbert A. Bergson, Assistant Attorney General, by Melville C. Williams, Chief, Midwest Office, Anti-trust Division." While the screening of the former dealers by the way of a questionnaire may be a method by which additional facts were to be obtained, it was also one of the steps designed to prepare counsel for the ensuing trial. Undoubtedly, the responses to the questionnaire would aid counsel in determining which witnesses should be called and the relevancy, materiality and effect of their testimony if they were to be called. It seems clear, therefore, that these questionnaires were the work of the lawyers who were representing the Government in the litigation in question; at least, some legal skill had to be employed so as to frame appropriate questions which are designed to obtain an understanding of the business relationship of the former dealers and the particular defendant involved. While the formulation of questions propounded through a questionnaire under the circumstances herein may not require the same legal skill, it nevertheless is as much of the work of a lawyer as the preparation of proposed questions to be used in examining a witness at the actual trial.

Some contention is made that because the form and the contents of the questionnaire blank has been revealed to the defendants, that part of the work product is not privileged and in that defendant's counsel seek the answers submitted by those questions, such data do not constitute any work of counsel, but rather the efforts of the former dealers themselves. But it must be evident that such contentions are not sound. The questions and the answers must be necessarily considered together. The obtaining of the answers in response to the questions was the result of counsel's activities in preparing this case for trial. Actually, these answers are as much the work product of the lawyers as if the former dealers visited the Chicago office of counsel, and in response to questions propounded, counsel made office memoranda of the information divulged.

There are no unusual circumstances which would justify the yielding of the doctrine in the interest of justice. The names and addresses of these former dealers canvassed by the plaintiff are known to the defendants. Similar questionnaires may be submitted by defendants to them if they so desire. Representatives of the defendants are located in the immediate areas where most of the ex-dealers reside. This Court is not unmindful of some of the practical difficulties which may confront the defenadnts in carrying on their investigation with their former dealers, many of whom may have grievances, because they are no longer associated with the particular defendant. And there may be ex-dealers who may refuse for some reason to give any statements, or refuse to divulge to the defendants the nature of the answers made to the questionnaires because they did not keep copies of the answers and they do not remember clearly the exact wording of the information imparted to the Government. But these difficulties are not so insurmountable that an exception should be made to the rule that the work product of a lawyer need not be divulged. These defendants are substantial companies which have adequate facilities for investigation and making due preparations for trial. The information which the Government acquired from the answers to the questionnaires was obtained long after the lawsuit was commenced. There is no marked disparity between the parties in obtaining facts and in making due preparations for trial. Nor are there any such unusual circumstances as existed in Bennett v. New York Central R. Co., D.C. W.D.N.Y., 1949, 9 F.R.D. 17, and Newell v. Capital Transit Co., D.C.1948, 7 F.R.D. 732, cases cited by the defendants.

■ This leaves only one other phase of the motion for discussion. Plaintiff, in answer to defendants' interrogatories submitted in January, 1949, listed certain dealers and possibly certain ex-dealers who were claimed by the Government to be some of those who had been advised by

the defendants to refrain from handling competing lines. After that list was submitted to the defendants, plaintiff's counsel wrote a letter to these parties indicating the statements made by the Government in answering defendants' interrogatories concerning the experience of that particular dealer and requesting from the dealer any further information in that connection which should be made known to the Government. Certain answers were received by plaintiff's counsel in response to their letters, and it is these responses which defendants seek by this motion to inspect and copy. The total number of letters sent out by the Government in the Deere case was to some 46 dealers. No number is indicated in the other cases. Responses that were received by plaintiff's counsel are comparatively few in number. Obviously, therefore, the burden of contacting these dealers by the defendants is not substantial. Moreover, the views heretofore expressed as to the doctrine of privilege apply to this phase of the motion.

In view of the premises, therefore, it follows that defendants' motions must be, and the same hereby are, in all things denied.

An exception is allowed.