## UNITED STATES v. SHUBERT et al.

United States District Court
S. D. New York.

April 27, 1951.

Supplemental Opinion July 5, 1951.

Richard K. Decker, Herbert N. Maletz, Henry M. Stuckey, Victor A. Altman, and Estella L. Baldwin, all of Washington, D. C., for the United States.

Cravath, Swaine & Moore, New York City, for defendants Marcus Heiman and United Booking Office, Inc.

Klein & Weir, New York City, for defendants, Lee Shubert, Jacob Shubert, Select Theatres Corp. and United Booking Office, Inc.

Lipper, Shinn & Keeley, New York City (Alfred McCormack, William Klein, Aaron Lipper and Murray W. McEniry, all of New York City, of counsel), for defendant L. A. B. Amusement Corp.

LEIBELL, District Judge.

On February 21, 1950 the United States commenced the within action, charging that the named defendants had combined and conspired to restrain and monopolize trade and commerce in the legitimate theatre industry, in violation of the provisions of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C.A. §§ 1, 2. The specific offenses charged, to which the defendants have entered a general denial, appear in paragraphs 50, 51 and 52 of the complaint, which read as follows:—

"50. The defendants, for many years last past, have been and now are engaged in a combination and conspiracy in restraint of the aforesaid interstate trade and commerce in the production, booking and presentation of legitimate attractions, and have combined and conspired to mo-

nopolize, and have attempted to monopolize and have monopolized the aforesaid interstate trade and commerce in the booking of legitimate attractions throughout the United States and in the presentation of legitimate attractions in Baltimore, Maryland; Boston, Massachusetts; Chicago, Illinois; Cincinnati, Ohio; Detroit, Michigan; Los Angeles, California; New York City, New York; Philadelphia, Pennsylvania; Pittsburgh, Pennsylvania; and Washington, D. C. in violation of Sections 1 and 2 of the Sherman Act. The defendants threaten to continue such offenses, and will continue them, unless the relief hereinafter prayed for in this complaint is granted.

"51. The aforesaid combinations and conspiracies to unreasonably restrain and to monopolize trade and commerce, the attempts to monopolize and monopolizations of trade and commerce have consisted of a continuing concert of action among the defendants, the substantial terms of which have been that the defendants: (a) compel producers to book their legitimate attractions exclusively through the defendants; (b) exclude others from booking legitimate attractions; (c) prevent competition in the presentation of legitimate attractions; (d) discriminate in favor of their own productions with respect to booking and presentation; and (e) combine their power in booking and presentation in order to maintain and strengthen their domination in each of these fields.

"52. Pursuant to said combinations and conspiracies, attempts to monopolize and monopolizations, the defendants have done the things they agreed to do, by the following means, among others:

"(a) Conditioned their investments in the productions of legitimate attractions by others upon agreements by the producers to book each of those attractions exclusively through the defendants;

"(b) Booked substantially all legitimate attractions produced by the defendants;

"(c) Forced producers to grant to the defendants the exclusive right to book the legitimate attractions of said producers for an entire theatrical season;

"(d) Conditioned the booking of legitimate attractions into theatres in try-out towns upon agreements by producers to book each of those attractions exclusively through the defendants thereafter;

"(e) Conditioned the booking of legitimate attractions into Shubert-operated theatres in New York City upon agreements by the producers to book each of those attractions exclusively through the defendants thereafter;

"(f) Coerced producers who had booked independently of the defendants to pay penalties or to accept unfavorably discriminatory booking terms, as a condition of obtaining bookings through them;

"(g) Entered into agreements with operators whereby said operators agreed to present only attractions booked through the defendants and defendants agreed not to book for competing operators;

"(h) Excluded legitimate attractions booked independently of the defendants from theatres operated by them and from affiliated theatres;

"(i) Excluded legitimate attractions booked through the defendants from theatres competing with affiliated theatres or with those operated by the defendants;

"(j) Harassed operators of competing theatres;

"(k) Coerced and intimidated independent theatre operators located in towns where the defendants operated theatres, or where they desired to operate theatres, to relinquish control of their theatres or a share of the profits thereof, by expressed or implied threats to deprive them, by virtue of the defendants' control of booking, of access to legitimate attractions;

"(1) Acquired control of the operation of competing theatres."

The effects of the concerted acts of the defendants are alleged in paragraph 53 of the complaint, as follows:—

"53. The concerted action of the defendants pursuant to and in furtherance of the violations of law alleged in this complaint have had, among others, the following effects:

"(a) Producers have been forced to book exclusively with the defendants, on non-

competitive terms, in order to obtain access to suitable theatres;

"(b) Persons have been denied the right to engage in the business of operating a booking office in competition with the defendants;

"(c) Operators of independent theatres in cities where the defendants operate theatres, or where affiliated theatres are located, have been systematically excluded from obtaining legitimate attractions;

"(d) In many cities where the defendants operate theatres, or where affiliated theatres are located, operators of independent theatres have been forced out of the business of presenting legitimate attractions;

"(e) Persons have been denied the right to engage in the business of presenting legitimate attractions in cities where the defendants operate theatres, or where affiliated theatres are located;

"(f) In cities where the defendants operate theatres, or where affiliated theatres are located, the public has been deprived access to legitimate attractions and the benefits which flow from free enterprise and open competition;

"(g) The interstate commerce in production, booking, and presentation has been unreasonably restrained and the interstate commerce in booking and presentation has been monopolized."

On September 6, 1950 the defendants served upon the United States a set of interrogatories pursuant to *Rule 33* of the Federal Rules of Civil Procedure, 28 U.S.C.A. The interrogatories are twenty-five in number; each numbered interrogatory, with a few exceptions, contains several subdivisions. On October 13, 1950 the United States served upon the defendants written objections to certain of the defendants' interrogatories. Objections were made to interrogatories No. 8 (e to h inclusive), No. 11 (a to e inclusive), No. 12 (a to k inclusive), No. 13 (a to f inclusive), No. 14 (a to e inclusive), No. 15 (a to c inclusive), and Nos. 18, 19 and 20. The specific grounds of the objections were that the interrogatories call for the disclosure, contrary to public policy, of the identity of persons who have provided the United States with information concerning the commission of an offense against the United States, and that the sources of such information are confidential and privileged. An additional ground for objection to interrogatories 8(e), 14 (a to e inclusive), 15(a to c inclusive), 18, 19 and 20 was that the information sought constituted the "work product" of the Department of Justice and was not subject to discovery within the rule of Hickman v. Taylor, 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. Further objection is made to interrogatory 15 (a to c inclusive) on the ground that it calls for the production of records of investigations of the Federal Bureau of Investigation which plaintiff contends are confidential and privileged.

On November 22, 1950 the United States served answers to the interrogatories on the defendants consisting of 111 typewritten pages. The interrogatories not objected to were answered. Of the interrogatories objected to, Nos. 8(e), 12(i), 13(d), 14(a) to (e) inclusive, 15(a)(b)(c), 18, 19 and 20 were not answered at all. The other interrogatories objected to, were answered reserving the right of objection. In most instances such answers were sufficiently full and complete; in others additional details should be furnished, if available, as hereinafter indicated.

A number of the interrogatories required the production of documents as part of the answers. A mass of documents were furnished by the United States "without conceding that the defendants have any right to call for documents by interrogatories filed pursuant to Rule 33". Nearly all of those documents were obtained from the defendants' files.

On February 16, 1951 the plaintiff's objections to the interrogatories were heard by the Court, together with a motion by defendants, under Rule 34 of the Federal Rules of Civil Procedure, requiring the production of the same documents which were called for by the interrogatories. On February 20, 1951 the Court approved a stipulation entered into between the parties by which the plaintiff agreed to produce such documents as the Court might

require the plaintiff to identify pursuant to the interrogatories.[1]

One of the elements which must be considered in an action of this kind is that this is a civil anti-trust suit, charging the defendants with an extensive conspiracy to violate the anti-trust laws, a conspiracy dating back to 1933. The investigation into the conduct of the defendants was conducted by the government over a period of about five years. The defendants are alleged to own, control or dominate hundreds of theatres throughout the United States. It is obvious that some attempt must be made by the parties and the court to narrow the issues and limit the proof, so as to keep the trial that will eventually be held within the bounds of reasonableness. This should be done at a pretrial conference. In an address before the New York State Bar Association, January 24, 1951, Judge E. Barrett Prettyman of the United States Court of Appeals, District of Columbia Circuit, stated with respect to anti-trust cases:—"The fact is that controversies of the scope and complexity of these trials cannot be resolved unless issues are framed and evidence directed to them and them alone. This is not merely a philosophical fact; it is also a physical fact. There simply are not enough time, money, judges, and available lawyers to test in a formal proceeding the existence and the nature of every transaction performed or contemplated by a person or a group of persons over an extended period of time. The bar which is involved, both government and private, must, as a matter of necessity, be brought to the realization, and to the practice, that a trial is for the determination of issues; issues are disputes; a dispute must concern a known subject; to be justiciable, the positions of the parties upon the subject must be known; to be persuasive, evidence must be understandable and definitive."

Judge Augustus N. Hand of the United States Court of Appeals in a similar address described the technique followed in United States v. Paramount Pictures, Inc., D.C., 85 F.Supp. 881 as follows:—"We started out, as usual, with a preliminary hearing, at which the judges asked the counsel to lay all their cards on the table and to furnish their opponents with detailed statements of everything they proposed to offer at the trial of the case, and enjoined them not to come into court without most complete preparation."

[See also an article entitled "The Big Case: Procedural Problems in Antitrust Litigation" by Breck McAllister, in 64 Harv.L.Rev. 27; and a copy of a lecture delivered by William D. Whitney at the New York City Bar Association, printed in its publication, the "Record", in December 1950.]

Another element which must be considered is the extent to which governmental privilege may keep from discovery matters and documents which are in the possession of the government. The government may claim a genuine privilege for communications it receives from those who give information concerning law violations "because such communications ought to receive encouragement, and because that confidence which will lead to such communications can be created only by holding out exemption from a compulsory disclosure of the informant's identity". VIII Wigmore on Evidence, § 2374. Even this privilege is subject to certain inherent exceptions (Wigmore #2374):

"(1) The privilege applies only to the *identity* of the informant, not to the contents of his statement as such, for, by hypothesis, the contents of the communication are to be used and published in the course of prosecution.

\* \* \* \* \* \*

1. "It is hereby stipulated and agreed that if the rulings of the Court on the pending objections of plaintiff to Interrogatories 8(f), 8(h), 12(a), 12(b), 12(c), 12(d), 12(e), 12(f), 12(j) and 13(a) (which were propounded by defendants on September 5, 1950) shall be such as to require plaintiff to identify any documents (other than those which have already been produced by plaintiff in answer to said Interrogatories), plaintiff, upon identifying said documents, will furnish a copy thereof to each of the defendants."

"(2) If the identity of the informer is *admitted or known,* then there is no reason for pretended concealment, and the privilege of secrecy would be merely an artificial obstacle to proof.

"(3) The privilege applies to communications to such officers only as have a *responsibility or duty* to investigate or to prevent public wrongs, and not to officials in general. This ordinarily signifies the *police,* and officials of *criminal justice* generally.

"But it may also include *administrative officials* having a duty of inspection or of law-enforcement in their particular spheres. The truth is that the principle is a large and flexible one; it applies wherever the situation is one where without this encouragement the citizens who have special information of a violation of law might be deterred otherwise from voluntarily reporting it to the appropriate official."

The rule against disclosure of the identity of informants has recently been applied in several anti-trust cases. In United States v. Kohler, D.C.E.D.Pa.1949, 9 F.R.D. 289, Judge Kirkpatrick upheld exceptions to interrogatories which called for the names and addresses of persons contacted in the government's investigation and their statements and documents furnished by them. The Court held:

"It appears that before the suit was brought the government through agents of the Federal Bureau of Investigation made a nation-wide investigation of the manner in which the plaintiff conducted its business, interviewing a large number of customers and other persons with whom the defendant dealt and obtaining from them and from other witnesses statements, both written and oral, together with originals and copies of invoices, records of sales and letters relating to the defendant's practices and business transactions. In substance, this is the information which is asked for in Interrogatory 5 and which the plaintiff objects to giving.

"It is an important consideration that in the present case the government is not asserting a proprietary or financial claim, or resisting one as it was in O'Neill v.

United States, D.C., 79 F.Supp. 827, and, therefore, the investigation was for a purpose entirely different from that in the O'Neill case. The United States brought the present suit in its sovereign capacity seeking to enforce the antitrust laws and the sanctions in these laws. The gist of the action is the alleged violation of a criminal statute.

\* \* \* \* \* \*

"\* \* \* In my opinion its disclosure is forbidden by much broader considerations of public policy, which Wigmore (Sec. 2374) calls a genuine privilege. This policy cannot be better stated than it was in an opinion of Attorney General Jackson, 40 Op.Atty.Gen. p. 45, April 30, 1941, as follows: 'Moreover, disclosure of the reports would be of serious prejudice to the future usefulness of the Federal Bureau of Investigation. As you probably know, much of this information is given in confidence and can only be obtained upon pledge not to disclose its sources. A disclosure of the sources would embarrass informants—sometimes in their employment, sometimes in their social relations, and in extreme cases might even endanger their lives. We regard the keeping of faith with confidential informants as an indispensable condition of future efficiency.' "

In United States v. Deere & Co., D.C. Minn.1949, 9 F.R.D. 523, 525, the court upheld objections to a motion to produce the answers of dealers of the defendant companies to certain questionnaires and letters which had been directed to the dealers by the attorneys for the government. Judge Nordbye held:—

"The United States Supreme Court has declared in Re Quarles, 1895, 158 U.S. 532, 15 S.Ct. 959, 961, 39 L.Ed. 1080: 'It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the posse comitatus in upholding the laws of his country. It is likewise his right and his duty to communicate to the executive officers any information which he has of the commission of an offense against those laws; and such information, given by a private citizen, is a

privileged and confidential communication, * * * the disclosure of which cannot be compelled without the assent of the government. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12 [28 L.Ed. 158]; U. S. v. Moses, 4 Wash. CC. 726, Fed.Cas. No. 15,825; Worthington v. Scribner, 109 Mass. 487, [12 Am. Rep. 736].'

\*       \*       \*       \*       \*       \*

"There is no doubt that this rule would not apply to many cases involving the Government where the latter seeks to protect no public interest as such. Actions under the Anti-Trust Acts, however, are clearly actions based upon the public interest."

In United States v. Lorain Journal Co., D.C., 10 F.R.D. 487, 488, the information sought by the interrogatories submitted therein was the "names of the persons who complained to or were interviewed by representatives of the government; the memoranda of those interviews made by the representatives of the government or any signed statements obtained by them; the names of the investigatory agents of the Government; and, finally, a demand to see every scrap of paper in any government file having any relation whatsoever to the investigation made and the complaint filed." The Court held: "The effort to obtain the names and statements of those who discussed the matter with, complained to, or were interviewed by the representatives of the Government must fail. A similar line of inquiry was refused in U. S. v. Kohler, D. C., 9 F.R.D. 289, on the grounds of public policy and in the exercise of judicial discretion. The principle involved was the protection from disclosure of the identity of informers to the Government of violations of statutes designed to prevent public wrong, even though the vindication of the statute is in form of a civil suit. See VIII Wigmore § 2374. In an extraordinary case, perhaps, this principle may have to yield to the requirements of pretrial discovery or compulsory disclosure at the time of trial, but this is hardly such a case. Indeed the Court is at a loss to see how the information sought by defendants can be of any real assistance in the further crystallization of issues or in preparation for trial.

In the event that the identity of such informants or the substance of their communication is voluntarily disclosed by the Government at trial, an order of the Court at that time can prevent any harm to defendants that might arise from such sudden confrontation."

Another case, which appears to have considered interrogatories and demands for production of documents, similar to those here in issue, is United States v. Cotton Valley Operators Committee, D.C.E.D.La. 1949, 9 F.R.D. 719, 720. The defendants requested the plaintiff to produce for inspection reports of the Federal Bureau of Investigation and correspondence with various persons. The following is quoted from Judge Dawkins' opinion:—"the Court stated from the Bench * * * that if the documents were submitted to the Court, with such claims as to privilege as the Attorney General desired to make, they would be considered before allowing opposing counsel to see them and if it appeared, in the Court's judgment, that production of any part thereof would be injurious to public interest, they would be excluded; otherwise, the order to produce for the inspection of defendants would be sustained. This, having been declined, counsel was told that a reasonable time would be allowed for further consideration, and the latter, stating no additional time was desired, the Court announced that the only course left was to dismiss the complaint for failure to comply with its orders."

On appeal to the Supreme Court from the judgment dismissing the complaint, the judgment was affirmed by an equally divided court, 1950, 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356. Mr. Justice Clark took no part in the consideration or decision of this case. How and why the court so divided, can only be the subject of speculation. It may be that the judges who voted to affirm simply approved the dismissal of the complaint as a sanction or punishment for plaintiff's refusal to obey the District Court's order.

In 4 Moore's Federal Practice, § 34.08 (2nd Edition) the factors required to establish "good cause" under Rule 34, relating

to the discovery and production of documents, are discussed as follows:—"Considerations of practical convenience should play the leading role in determining what constitutes good cause. What is good cause depends on the particular facts of each case; as Judge Mize said in one decision, 'It is difficult to lay down a definition of good cause that would apply to every particular case. There is a wide latitude.' Generally speaking, however, there should be a showing that the documents sought to be inspected will in some way aid the moving party in the preparation of his case; that the documents are relevant to the issues; that the moving party must establish his claim or defense by documents, most of which are in the adverse party's possession; or that denial of production would unduly prejudice the preparation of the party's case or cause him hardship or injustice. That production at the trial would be cumbersome and time-consuming is a reason for ordering production and inspection under Rule 34."

The government, as a plaintiff enforcing a violation of Sections 1 and 2 of the Sherman Act, is subject to the deposition and discovery provisions of the Federal Rules of Civil Procedure, to an extent necessary to inform the defendant clearly and specifically of the nature of the charges against him, the transactions upon which the government will rely to sustain the charges and the documentary proof of the charges. But documents which will reveal the identity of persons who have "informed" with respect to the alleged illegal activities and which are not to be offered by the government at the trial, and data which has been assembled by the attorneys for the government through their own efforts or by others working under their directions, including statements of witnesses taken by those employed in the Department of Justice or any of its bureaus, in the preparation of the case for trial, and specifically the contents of reports by the F.B.I. and investigating agents of the Department of Justice, need not be disclosed in answer to interrogatories or on a motion for a discovery. It may be that special circumstances developing at the trial will require a departure from this ruling, but that will be for the trial judge to decide on the showing then made.

The information already furnished to the defendants by the government in the 111 pages of answers to the interrogatories and in the 1000 documents covers practically every allegation of paragraphs 50 to 53 of the complaint. The defendants should be able to gather from all that data not only the precise charges against them but also the general nature of the proof the government will offer to sustain the charges.

I will now make the following rulings on the government's objections to the defendants' interrogatories:—

As stated above, the government answered a number of interrogatories, even though it had filed formal objections thereto. The answers were made, reserving the objections. Where the answers are sufficient, the objections really become moot. The answers to the following interrogatories seem to be sufficient at this time and accordingly the Court need not rule on the government's objections:—Interrogatories 8(f), 8(g), 8(h), 11(a), 11(b), 11(c), 11(e), 12(a), 12(b), 12(c), 12(d), 12(e), 12(f), 12(g), 12(j), 12(k), 13(a), 13(c) and 13(f).

The following are the Court's rulings on other objections made by the government to certain of defendants' interrogatories:—

The plaintiff is directed to answer so much of interrogatory 8(e) as requests the plaintiff to "identify each person, corporation and association if any, that were allegedly unable to present legitimate attractions in the Belasco Theatre, Washington, D. C. during the period when it was 'kept dark'". The plaintiff will also furnish the defendants with copies of each communication received by the Department of Justice from any person complaining that he was prevented from presenting legitimate attractions at the Belasco Theatre, if the communication is to be offered by plaintiff as an exhibit at the trial.

The plaintiff's answer to interrogatory 12(h) is general in its terms. The answer should be amplified by stating the

particular instances the plaintiff intends to rely upon at the trial to establish the alleged "policy" of the defendants which is described in the plaintiff's answer to this interrogatory.

The answers of plaintiff to two other interrogatories, 11(d) and 13(e), include, by reference, the answer given by plaintiff to interrogatory 12(h). When plaintiff complies with the court's direction by an amended answer to interrogatory 12(h), the plaintiff's answer to interrogatories 11(d) and 13(e) will be sufficient.

▆ The plaintiff has not answered interrogatory 12(i) which relates to defendants' alleged harassment of operators of competing theatres. The plaintiff is directed to answer this interrogatory in respect to any harassed theatre operator who will be a witness for the plaintiff at the trial or concerning whom the plaintiff intends to offer evidence at the trial.

▆ Plaintiff has answered in a general way interrogatory 13(b) which relates to persons who are alleged to have been denied, by defendants, the right to engage in the business of operating a booking office in competition with defendants. If the plaintiff has the names of any persons who were thus excluded by defendants from the booking of theatrical attractions, and who will be witnesses at the trial, or concerning whom plaintiff intends to offer evidence at the trial, interrogatory 13(b) should be answered as to such persons.

▆ Plaintiff objects to interrogatory 13(d) which relates to independent legitimate theatre operators who are alleged to have been forced out of the business of presenting legitimate attractions, by the defendants. The plaintiff is directed to answer this interrogatory in respect to any such theatre operator who will be a wit-

ness for the plaintiff at the trial or concerning whom the plaintiff intends to offer evidence at the trial.

▆ Plaintiff objects to defendants interrogatories 14(a), 14(b) and part of 14 (e). Those interrogatories relate to persons who have complained and communications received by the Department of Justice from persons complaining of the defendants, in connection with the production, presentation and booking of legitimate attractions. Interrogatory 14(a) should be answered in respect to any complainant who will be called as a witness by the plaintiff. Interrogatories 14(b) and 14(e) should be answered insofar as they call for copies of any communication received from any complainant, if the plaintiff intends to offer the communication as an exhibit at the trial.

▆ Interrogatories 14(c) and 14(d) and part of 14(e) relate to the replies made by the Department of Justice to any such communications. The plaintiff need not answer interrogatories 14(c) and 14(d), and also so much of interrogatory 14(e) as relates to such "replies". In fact defendants in their brief "do not urge that answers be required to interrogatories 14 (c) and 14(d)".

▆ Plaintiff objects to interrogatories 15(a), 15(b) and 15(c) which ask for copies of the reports of any agent of the Federal Bureau of Investigation or of the Department of Justice concerning the methods and business activities of the defendants, and the names of the persons making said reports. The plaintiff's objection is based on a claim of privilege under the decided cases, and under the provisions of T. 5 U.S.C.A. § 22 and the regulations issued pursuant to the statute, including Department of Justice Order No. 3229 dated May 2, 1939.[2] In the case at

---

2. The order of May 2, 1939 (Order No. 3229) provides:—

"Pursuant to authority vested in me by R.S. 161 (U.S.Code, Title 5, Section 22), it is hereby ordered:

"All official files, documents, records and information in the office of the Department of Justice, including the several offices of United States Attorneys, Fed- eral Bureau of Investigation, United States Marshals, and Federal penal and correctional institutions, or in the custody or control of any officer or employee of the Department of Justice, are to be regarded as confidential. No officer or employee may permit the disclosure or use of the same for any purpose other than for the performance of his official

bar the Attorney General has submitted a "Claim of Privilege" which specifies among other items, the F.B.I. and Department of Justice reports.[3] The objections of plaintiff to interrogatories 15(a), 15(b) and 15(c) are sustained, and plaintiff need not answer said interrogatories.

I sustain the claim of privilege at this time. The same issue may be presented at the trial by a subpoena duces tecum served on the Attorney General himself to produce these reports. Then a clear cut ruling on the claim of privilege may be obtained and reviewed by the higher courts. See U. S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416. Further, the defendants have not shown "good cause" for an inspection of these reports, as required by Rule 34, F.R.Civ.Pro. And finally, my ruling in respect to the reports of F.B.I. agents and other agents of the Department of Justice is based upon an experience in a similar situation. I have seen the report of a government investigator, after it was turned over to defendants, so used in an examination of the investigator before trial by counsel for defendants in another case (U. S. v. American Distilling Co., Civil 28–752), that the examination of the chief investigator dragged on in this Court for many months. It was the subject of several motions, including a motion to punish him for contempt. Meanwhile, the government was prevented from examining the real defendants and those who allegedly were involved in a conspiracy to violate the price control statute.

The possibility of protracted delay in the proceeding preliminary to trial would be greatly increased by turning over the F.B.I. and other Department of Justice reports to the attorneys for defendants in an anti-trust suit.

■■■ In interrogatories 16 and 17 defendants ask that plaintiff furnish the names and addresses of all witnesses plaintiff intends to call to prove the alleged conspiracy and the alleged attempt to monopolize the booking and presentation of legitimate attractions. The plaintiff's answer, in each instance, is that plaintiff does not presently know what witnesses it expects

---

duties, except in the discretion of the Attorney General, The Assistant to the Attorney General, or an Assistant Attorney General acting for him.

"Whenever a *subpoena duces tecum* is served to produce any of such files, documents, records or information, the officer or employee on whom such subpoena is served, unless otherwise expressly directed by the Attorney General, will appear in court in answer thereto and respectfully decline to produce the records specified therein, on the ground that the disclosure of such records is prohibited by this regulation."

3. "Privilege is claimed for the following information sought by the defendant's interrogatories 8 (e to h, inclusive), 11 (a to e, inclusive), 12 (a to k, inclusive), 13 (a to f, inclusive), 14 (a to e, inclusive), 15 (a to c, inclusive), 18, 19, and 20:

"(1) The names and addresses of all persons contracted or interviewed in connection with this case.

"(2) The names of Federal Bureau of Investigation agents or other agents of the Department of Justice who conducted the investigation in this case.

"(3) Copies of Federal Bureau of Investigation and/or Department of Justice reports.

"(4) Summaries of information furnished by persons interviewed and the names and addresses of complainants.

"(5) Copies of signed statements obtained from persons interviewed."

Privilege is claimed for the following documents sought by the defendant's motion to produce:

"(1) Each letter, telegram, or other communication and statement received by the Department of Justice since February 1, 1940 relating to the methods of operation and business activities of the defendants or relating to the production, presentation or booking of legitimate attractions within the United States;

"(2) Each report, together with each document annexed thereto or filed therewith made to the Department of Justice since February 1, 1940, by the Federal Bureau of Investigation or by any agent of the Department of Justice with respect to the methods of operation and business activities of the defendants or with respect to the production, presentation or booking of legitimate attractions within the United States; and

"(3) Each written statement obtained by plaintiff from each of the witnesses by whom plaintiff expects to prove the allegations of the complaint."

to call and further states that plaintiff agrees to furnish such information to the defendants prior to the trial. That answer is not satisfactory. Plaintiff must know at this time the names of certain witnesses who will be called by the plaintiff. The list of plaintiff's prospective witnesses should be furnished as it is now known. It may be supplemented later.

Plaintiff objects to interrogatories 18 and 19 which inquire if plaintiff has obtained any written statements from prospective witnesses and if so to give the names and dates and to furnish copies of each written statement. The ruling in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, must be applied to this interrogatory. Plaintiff need not comply with interrogatories Nos. 18 and 19. [See also Alltmont v. United States, 3 Cir., 177 F.2d 971 and Cleary Bros. v. Christie Scow Corp., 2 Cir., 176 F.2d 370.]

Plaintiff's objection to interrogatory No. 20 is sustained. The interrogatory contains similar requests in respect to oral statements of witnesses obtained by plaintiff. The hearsay rule and the complications involved in any attempt by defendants to use the oral statements of witnesses obtained by plaintiff, requires this ruling, regardless of privilege.

In conclusion, plaintiff's attorneys are reminded of the new approach of the judiciary to the trial of long and complicated anti-trust suits. Judge Prettyman and Judge A. N. Hand, whose statements have been quoted above, have indicated the course to be followed generally at the pre-trial conference. The elimination of the element of surprise in the trial of such cases is one of the objectives of the pre-trial conference. There are now before me only the motion for a discovery and the motion in relation to interrogatories. The pre-trial judge will consider in addition all that is contemplated by Rule 16 of the F.R.Civ.Pro. in relation to pre-trials. At the time of the pre-trial conference, the rulings I have made in respect to the answers to the interrogatories and the production of documents may be supplemented by the pre-trial judge, in view of the situation then presented and in order to best serve the purposes of Rule 16.

Settle an order in accordance with the above rulings.

### Supplemental Opinion.

Three days after the filing of my opinion in this case (April 27, 1951) the United States Supreme Court handed down its opinion in the case of Bowman Dairy Company et al. v. United States, 341 U.S. 214, 71 S.Ct. 675. The plaintiff's attorneys later noticed for settlement a proposed order based on my opinion of April 27th. The defendants' attorneys thereupon wrote me and asked that no order be entered because they intended to move for a reargument in view of the Supreme Court decision in the Bowman Dairy Company case. The attorneys for the respective parties hereto subsequently conferred and have entered into a stipulation dated June 29th that plaintiff will answer defendants' interrogatories 8(e) and 14(b) in the form originally propounded. In respect to part 1 of defendants' motion to produce, the stipulation provides:—

"3. The writers or senders having agreed thereto, the plaintiff will furnish copies of all documents requested by the defendants in part 1 of their Motion to Produce, served December 19, 1950. Part 1 of the Motion to Produce is as follows:

"(1) each letter, telegram, other communication and statement (or copy thereof if the original be unavailable), if any, received or obtained by the Department of Justice of the United States since February 1, 1940, from individuals, corporations or associations relating to the methods of operation or business activities of the defendants (alone, in association with each other or in association with non-defendants) or relating to the production, presentation or booking of legitimate attractions within the United States."

I am signing the proposed order submitted by the plaintiff's attorneys based on my opinion of April 27, 1951. I am also signing a "So Ordered" on the stipulation of June 29, 1951, which in effect will be a modification of the order with respect to the matters covered by the stipulation.