**UNITED STATES of America**

**v.**

**SWIFT & COMPANY, Armour and Company, Wilson & Co., Inc., and The Cudahy Packing Company, et al.**

**No. 58 C 613.**

United States District Court
N. D. Illinois.
Sept. 14, 1959.

---

Earl A. Jinkinson, Willis L. Hotchkiss, Dorothy M. Hunt, Ned Robertson, Chicago, Ill., Attorneys, Department of Justice, John T. Chadwell, Snyder, Chadwell, Keck, Kayser & Ruggles, Chicago, Ill., for Swift & Co., Swift & Co., Inc. and Derby Foods, Inc.

E. Houston Harsha, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Armour & Co.

Walker Smith, McDermott, Will & Emery, Chicago, Ill., for Cudahy Packing Co. and E. A. Cudahy, Jr.

JULIUS J. HOFFMAN, District Judge.

The defendants, petitioners for modification of a consent decree previously

entered in government antitrust proceedings, have moved under Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A., for the production of "copies of all writings from any person, firm or corporation * * * received by the plaintiff [government] in answer to questionnaires or inquiries of the plaintiff * * *." Copies of the questionnaires and inquiries are appended to the motion.

The plaintiff resists the motion upon three grounds. First, it is argued that the writings sought are privileged from discovery as the work product of the lawyer within the meaning of the opinion in Hickman v. Taylor, 1946, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. Second, the plaintiff submits that the defendants have failed to show good cause for production as required by Rule 34. Third, it is claimed that the communications are privileged as information supplied to a law enforcement agency of the government.

The first two grounds of objection are related. Under the principles laid down in the Hickman case, the privilege of the lawyer's files is not absolute. If good cause is shown, disclosure may be compelled even though the attorney's privacy is thereby invaded. 329 U.S. at page 512, 67 S.Ct. 385. The questions of the work-product privilege and good cause may therefore be considered together.

■ The crux of this qualified privilege is the protection of the lawyer's mental processes, his strategy, and his legal theories evolved in preparation for trial, free from unnecessary intrusion by the opposing party. This protection does not extend to all information supplied to the attorney at his request. "A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney." Hickman v. Taylor, 1946, 329 U.S. 495, at page 504, 67 S.Ct. at page 390. Statements or reports made in the ordinary course of business and not in preparation for trial do not embody the lawyer's opinions, tactics, or

conclusions, and accordingly they do not enjoy the privilege afforded the attorney's work. Speaking of such cases, Professor Moore observes:

"The Supreme Court decision clearly authorizes, if it does not require, these holdings. The policy against invasion of 'the files and the mental impressions of an attorney' is not applicable, and, that absent, the Court made it clear that discovery is to be liberally allowed and that 'either party may compel the other to disgorge whatever facts he has in his possession.'" [4 Moore, Federal Practice 1135–1136 (2d Ed. 1950)]

■ Here the written statements sought were concededly obtained in preparation for trial. But it does not appear that production would involve any new or substantial invasion of the thoughts of plaintiff's attorneys. The questionnaires and inquiries which elicited the written responses at issue have already been revealed to the defendants. Compilations of the information contained in the various answers were disclosed in part in the materials previously submitted to support the plaintiff's motion for summary judgment.

The motion to produce is confined to writings by the witnesses, and no attempt is made to examine any statement, memoranda, or note prepared by any attorney. In this respect the situation differs from that before the Court in the Hickman case itself, where the moving party made a broad demand for statements prepared by the lawyer, for his private memoranda containing facts learned by him, and for his recollection of oral interviews with witnesses. Since the defendants have limited their motion to statements in writing prepared and supplied by the witnesses, it is unnecessary to decide upon the scope of the privilege in protecting reports and memoranda prepared by agents other than the attorney himself.

The information here at issue can be called the lawyer's work product only in a

qualified and attenuated sense. The privacy of counsel's mental processes is not at stake. Since the questions asked by the plaintiff have already been disclosed, the only "work" of the plaintiff to be protected are the largely clerical tasks of circulation and receipt of the questionnaires.

The trial of this case promises to be complex and protracted. The information sought by the defendants relates to economic conditions, the state of the market, and competitive forces in the meat and related foods industry. Such compilations of data can be adequately appraised and weighed only if their foundations can be tested. In such a case, the policy of full disclosure must control if litigation is to be manageable. The Report of the Committee on Procedure in Anti-Trust and Other Protracted Cases, adopted by the Judicial Conference of the United States and reported at 13 F.R.D. 62–84, states:

> "Unless it is impossible for some compelling reason, the parties to these cases should be required to exchange prior to trial copies of proposed exhibits. The advantages of such exchange in preventing delay and volume of record in the trial are obvious. Before such a case is called for trial each side should be advised fully as to the material which his opponent proposes to offer." [13 F.R.D., at 69]

As noted by the Supreme Court, "The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise." Hickman v. Taylor, 329 U.S. 495, at page 507, 67 S.Ct. at page 392.

This is not a case where specific witnesses with personal knowledge are equally known to the moving party, who could interview them himself. It is stated that a vast number of companies, in excess of 1500, received the questionnaires sent by the government, but their identities are not known. The case is therefore unlike United States v. Deere & Co., D.C.Minn.1949, 9 F.R.D. 523, where the government's questionnaire was sent to the defendant's own dealers. To compel these defendants to send a duplicate questionnaire would be time-consuming and expensive, and would not provide a sound basis for analyzing the statistical results of the plaintiff's survey or assaying its probative force.

In the course of the Hickman opinion, the Court observed:

> "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted." 329 U.S. at pages 511–512, 67 S.Ct. at page 394.

Here the information requested is relevant and undoubtedly useful to the de-

284

fendants in preparation for trial. It is not privileged as a communication from client to attorney. The privilege of the lawyer's work product and the showing of good cause sufficient to overcome it are interdependent, and when, as here, the factors supporting the claim of privilege are weak, the requisite showing of good cause is correspondingly lessened. There is disagreement among the lower courts on questions of this sort. Compare Durkin v. Pet Milk Co., D.C.W.D. Ark.1953, 14 F.R.D. 385, allowing production, with United States v. Deere & Co., D.C.Minn.1949, 9 F.R.D. 523, denying discovery. But neither decision is directly in point. In the last analysis, the determination must rest upon the balance struck in the particulars of a concrete case between the competing interests of full disclosure and protection for the fruits of the lawyer's labor. In the light of the importance of the information to the merits of the litigation, the difficulties confronting defendants' efforts to acquire the needed information for themselves, and the relatively inconsequential prejudice to the plaintiff, the objection to the motion on this ground must be overruled.

■■ The plaintiff's claim of the so-called informer's privilege also lacks merit. The function of that privilege is principally to prevent reprisals and recrimination against persons who have reported violations of law to an appropriate law enforcement agency. As stated in Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639:

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." 353 U.S. at page 60, 77 S.Ct. at page 627.

Extending the logic of this reasoning, the privilege has no application where the information supplied does not relate to the commission of some unlawful act or is not of the kind to excite resentment. Here the fact of commission of an offense was established by consent a number of years ago. The statements at issue relate not to that fact, but to the question whether market conditions today warrant modification of the decree. The companies which supplied the statements reported on the volume and operations of their businesses, and did not "inform" in any ordinary meaning of that term.

Referring again to the opinion in the Roviaro case, supra, the Supreme Court teaches that no absolute privilege can be claimed:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at page 62, 77 S.Ct. at page 628.

■ The government enjoys no general right to withhold information from an opposing litigant. Secrecy must be predicated upon the specific claim of some privilege based upon considerations peculiar to the operations of government or the government must conform to the rules governing private parties. Mitchell v. Bass, 8 Cir., 1958, 252 F.2d 513; Durkin v. Pet Milk Co., D.C.W.D.Ark.1953, 14 F.R.D. 385. "Likewise, it does not rest well with the government to insist upon withholding such information merely on the theory that disclosure would have an untoward effect on the govern-

ment's case from the point of view of a litigant." Fowkes v. Dravo Corporation, D.C.E.D.Pa.1945, 5 F.R.D. 51, 53.

The defendants' motion will accordingly be granted.